LAWYERS FOR CLEAN WATER, INC.
Daniel Cooper (Bar No. 153576)
        Email:  daniel@lawyersforcleanwater.com
Caroline Koch (Bar No. 266068)
        Email:  caroline@lawyersforcleanwater.com
1004-A O'Reilly Avenue
San Francisco, California 94129
Telephone:  (415) 440-6520
Facsimile:  (415) 440-4155

*Attorneys for Plaintiffs*
INLAND EMPIRE WATERKEEPER and ORANGE COUNTY COASTKEEPER

*Additional Plaintiffs' Counsel Listed On Next Page*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INLAND EMPIRE WATERKEEPER, a program of ORANGE COUNTY COASTKEEPER; ORANGE COUNTY COASTKEEPER, a California non-profit corporation;<br><br>                   Plaintiffs,<br>        vs.<br><br>FORGED METALS, INC., a California corporation,<br><br>                   Defendant. | Civil Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES**<br><br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*)** |

INLAND EMPIRE WATERKEEPER
Colin Kelly (Bar No. 266956)
        Email:  colin@iewaterkeeper.org
6876 Indiana Avenue, Suite D
Riverside, California 92506
Telephone:  (951) 530-8823
Facsimile:  (951) 530-8824


ORANGE COUNTY COASTKEEPER
Colin Kelly (Bar No. 266956)
        Email:  colin@coastkeeper.org
3151 Airway Avenue, Suite F-110
Costa Mesa, California 92626
Telephone:  (714) 850-1965
Facsimile:  (714) 850-1592

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Inland Empire Waterkeeper and Orange County Coastkeeper (collectively "Waterkeeper" or "Plaintiffs"), by and through their counsel, hereby allege:

## I.      JURISDICTION AND VENUE

1.      This is a civil suit brought under the citizen suit enforcement provision of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA"). *See* 33 U.S.C. § 1365. This Court has subject matter jurisdiction over the parties and this action pursuant to 33 U.S.C. § 1365(a)(1) and 28 U.S.C. §§ 1331 and 2201 (an action for declaratory and injunctive relief arising under the Constitution and laws of the United States).

2.      On May 1, 2014, Waterkeeper issued a sixty (60) day notice of intent to sue letter ("Notice Letter") to Forged Metals, Inc. ("Defendant") for its violations of California's General Permit for Discharges of Storm Water Associated with Industrial Activities (*National Pollutant Discharge Elimination System (NPDES) General Permit No. CAS000001, State Water Resources Control Board Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ*) (hereinafter "Storm Water Permit") and the Clean Water Act. The Notice Letter informed Defendant of Waterkeeper's intent to file suit against it to enforce the Storm Water Permit and the Clean Water Act.

3.      The Notice Letter was also sent to the registered agent for Defendant, the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region IX, the Executive Director of the State Water Resources Control Board ("State Board"), and the Executive Officer of the Regional Water Quality Control Board, Santa Ana Region ("Regional Board"), as required by 40 C.F.R. § 135.2(a)(1). The Notice Letter is attached hereto as Exhibit 1 and is incorporated herein by reference.

4.      More than sixty (60) days have passed since the Notice Letter was served on Defendant and the State and Federal agencies. Waterkeeper is informed and believes, and thereon alleges, that neither the EPA nor the State of California has commenced or is diligently prosecuting an action to redress the violations alleged in this complaint. *See* 33

U.S.C. § 1365(b)(1)(B). This action is not barred by any prior administrative penalty under Section 309(g) of the CWA. 33 U.S.C. § 1319(g).

5.      This complaint seeks relief for Defendant's substantive and procedural violations of the Storm Water Permit and the Clean Water Act resulting from Defendant's operations at 10685 Beech Avenue, Fontana, California 92337 ("Forged Metals Facility" or "Facility").

6.      Venue is proper in the Central District of California pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the sources of the violations are located within this judicial district.

## II.      LEGAL BACKGROUND

### A.      The Clean Water Act.

7.      The Clean Water Act requires point source discharges of pollutants to navigable waters be regulated by an NPDES permit. 33 U.S.C. § 1311(a); *see* 40 C.F.R. § 122.26(c)(1).

8.      Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States unless the discharge complies with various enumerated sections of the CWA. Among other things, section 301(a) prohibits discharges not authorized by, or in violation of, the terms of a National Pollutant Discharge Elimination System ("NPDES") permit issued pursuant to section 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342(b).

9.       "Waters of the United States" are defined as "navigable waters," and "all waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce, including waters which are subject to the ebb and flow of the tide." 33 U.S.C. § 1362(7).

10.      The EPA promulgated regulations defining "waters of the United States." *See* 40 C.F.R. § 122.2. The EPA interprets waters of the United States to include not only traditionally navigable waters, but also other waters, including waters tributary to navigable waters, wetlands adjacent to navigable waters, and intermittent streams that

could affect interstate commerce.

11.     The Clean Water Act confers jurisdiction over waters that are tributaries to traditionally navigable waters where the water at issue has a significant nexus to the navigable water. *See Rapanos v. United States*, 547 U.S. 715 (2006); *see also N. Cal. River Watch v. City of Healdsburg*, 496 F.3d 993 (9th Cir. 2007).

12.     A significant nexus is established if the "[receiving waters], either alone or in combination with similarly situated lands in the region, significantly affect the chemical, physical, and biological integrity of other covered waters." *Rapanos*, 547 U.S. at 779; *N. Cal. River Watch*, 496 F.3d at 999-1000.

13.     A significant nexus is also established if waters that are tributary to navigable waters have flood control properties, including functions such as the reduction of flow, pollutant trapping, and nutrient recycling. *Rapanos*, 547 U.S. at 782; *N. Cal. River Watch*, 496 F.3d at 1000-1001.

14.     Section 505(a)(1) of the Clean Water Act provides for citizen enforcement actions against any "person" who is alleged to be in violation of an "effluent standard or limitation . . . or an order issued by the Administrator or a State with respect to such a standard or limitation." *See* 33 U.S.C. §§ 1365(a)(i) and 1365(f).

15.     Forged Metals, Inc. is a "person" within the meaning of Section 502(5) of the Clean Water Act. *See* 33 U.S.C. § 1362(5).

16.     An action for injunctive relief is authorized under Section 505(a) of the Clean Water Act. *See* 33 U.S.C. § 1365(a).

17.     Each separate violation of the Clean Water Act subjects the violator to a penalty of up to $37,500 per day. *See* 33 U.S.C. §§ 1319(d) and 1365(a); 40 C.F.R. § 19.4 (Adjustment of Civil Monetary Penalties for Inflation).

18.     Section 505(d) of the Clean Water Act allows prevailing or substantially prevailing parties to recover litigation costs, including attorneys' fees, experts' fees, and consultants' fees. *See* 33 U.S.C. § 1365(d).

///

**B.     California's Storm Water Permit.**

19.     Section 402(p) of the Clean Water Act establishes a framework for regulating industrial storm water discharges under the NPDES permit program. 33 U.S.C. § 1342(p).

20.     Section 402(b) of the Clean Water Act allows each state to administer its own EPA-approved NPDES permit program for regulating the discharge of pollutants, including discharges of polluted storm water. *See* 33 U.S.C. § 1342(b). States with approved NPDES permit programs are authorized by Section 402(b) to regulate industrial storm water discharges through individual NPDES permits issued to dischargers and/or through the issuance of a statewide general NPDES permit applicable to all industrial storm water dischargers. *See id.*

21.     California is a state authorized by EPA to issue NPDES permits.

22.     In California, the State Board is charged with regulating pollutants to protect California's water resources. *See* Cal. Water Code § 13001.

23.     The Storm Water Permit is a statewide general NPDES permit issued by the State Board pursuant to the Clean Water Act. *See* Storm Water Permit, Finding No. 15.

24.     In order to discharge storm water lawfully in California, industrial dischargers must secure coverage under the Storm Water Permit and comply with its terms, or obtain and comply with an individual NPDES permit. Storm Water Permit, Finding #2. Prior to beginning industrial operations, dischargers are required to apply for coverage under the Storm Water Permit by submitting a Notice of Intent to Comply with the Terms of the General Permit to Discharge Storm Water Associated with Industrial Activity ("NOI") to the State Board. *See* Storm Water Permit, Finding #3.

25.     Violations of the Storm Water Permit are violations of the Clean Water Act. *See* Storm Water Permit, Section C(1) (Standard Provisions).

**C.     The Storm Water Permit's Effluent Limitations and Receiving Water Limitations.**

26.     Effluent Limitation (B)(3) of the Storm Water Permit requires dischargers

Complaint                                          6

covered by the Storm Water Permit to reduce or prevent pollutants in storm water discharges through the implementation of Best Available Technology Economically Achievable ("BAT") for toxic or non-conventional pollutants, and Best Conventional Pollutant Control Technology ("BCT") for conventional pollutants. Toxic pollutants are listed at 40 C.F.R. § 401.15 and include copper, lead, and zinc, among others. Conventional pollutants are listed at 40 C.F.R. § 401.16 and include biological oxygen demand ("BOD"), total suspended solids ("TSS"), oil and grease ("O&G"), pH, and fecal coliform.

27.     EPA's NPDES Storm Water Multi-Sector General Permit for Industrial Activities ("2008 MSGP Permit") includes numeric benchmarks for pollutant concentrations in storm water discharges ("EPA Benchmarks").

28.     The Benchmark Levels provide an objective standard to determine whether a facility's Best Management Practices ("BMPs") are successfully developed and/or implemented. *See* MSGP Fact Sheet, at 95 (2008), *available at* http://www.epa.gov/npdes/pubs/msgp2008_finalfs.pdf.

29.     Discharges from an industrial facility containing pollutant concentrations that exceed Benchmark Levels indicate that the facility has not developed and/or implemented BMPs that meet BAT for toxic pollutants and/or BCT for conventional pollutants. *Id.*

30.     Receiving Water Limitation C(1) of the Storm Water Permit prohibits storm water discharges from adversely impacting human health or the environment.

31.     Storm water discharges with pollutant levels that exceed levels known to adversely impact aquatic species and the environment are violations of Receiving Water Limitation C(1) of the Storm Water Permit.

32.     Receiving Water Limitation C(2) of the Storm Water Permit prohibits storm water discharges that cause or contribute to an exceedance of any "applicable Water Quality Standard in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan."

33.     Water Quality Standards ("WQS") are pollutant concentration levels determined by the State Board, the various regional boards, and the EPA to be protective of the beneficial uses of the waters that receive polluted discharges.

34.     The Water Quality Control Plan for the Santa Ana River Basin (Basin Plan), California Regional Water Quality Control Board, Santa Ana Region, 3rd Ed., (Rev. June 2011) ("Basin Plan") identifies the "Beneficial Uses" of water bodies in the region. The existing and/or potential Beneficial Uses for Reaches 2 – 4 of the Santa Ana River include, at a minimum: Agricultural Supply; Groundwater Recharge; Water Contact Recreation; Non-contact Water Recreation; Warm Freshwater Habitat; Wildlife Habitat; and Rare, Threatened, or Endangered Species. *See* Basin Plan at Table 3-1.

35.     Surface waters that cannot support the Beneficial Uses of those waters listed in the Basin Plan are designated as impaired water bodies pursuant to section 303(d) of the Clean Water Act. According to the 2010 303(d) List of Impaired Water Bodies, Reach 4 of the Santa Ana River is impaired for pathogens.[1] Reach 3 of the Santa Ana River is impaired for copper, lead, and pathogens.[2] Reach 2 of the Santa Ana River is impaired for indicator bacteria.[3]

36.     Discharges of pollutants at levels above WQS contribute to the impairment of the Beneficial Uses of the waters receiving the discharges.

37.     WQS applicable to dischargers covered by the Storm Water Permit include, but are not limited to, those set out in the Basin Plan and in the Criteria for Priority Toxic Pollutants for the State of California ("CTR"), 40 C.F.R. § 131.38.

38.     The CTR includes numeric criteria set to protect human health and the environment in the State of California. Water Quality Standards; Establishment of Numeric Criteria for Priority Toxic Pollutants for the State of California Factsheet, EPA-

---

[1] 2010 Integrated Report – All Assessed Waters, available at:
http://www.waterboards.ca.gov/water_issues/programs/tmdl/integrated2010.shtml (last accessed on May 14, 2014).
[2] *Id.*
[3] *Id.*

823-00-008 (April 2000), available at:

http://water.epa.gov/lawsregs/rulesregs/ctr/factsheet.cfm.

39.     Discharges with pollutant levels in excess of the CTR criteria, the Basin Plan standards, and/or other applicable WQS are violations of Receiving Water Limitation C(2) of the Storm Water Permit.

**D.     The Storm Water Permit's Storm Water Pollution Prevention Plan Requirements.**

40.     Section A(1) and Provision E(2) of the Storm Water Permit require dischargers to develop and implement a Storm Water Pollution Prevention Plan ("SWPPP") that complies with the requirements of the Storm Water Permit prior to commencing industrial activities.

41.     The objectives of the SWPPP are to identify and evaluate sources of pollutants associated with industrial activities that may affect the quality of storm water discharges, to identify and implement site-specific BMPs to prevent the exposure of pollutants to storm water, and to reduce or prevent the discharge of polluted storm water from industrial facilities. Storm Water Permit, Section A(2).

42.     Section A(3) of the Storm Water Permit requires a discharger to name the members of its on-site Storm Water Pollution Prevention Team and to indicate each team member's responsibilities in developing, implementing, and revising the SWPPP to ensure compliance with the Storm Water Permit.

43.     Section A(4) of the Storm Water Permit requires that the SWPPP include a site map that contains, among other things: the facility boundaries, storm water drainage areas and directions of flow for each drainage area, on-site surface water bodies, nearby water bodies, areas of soil erosion, and municipal storm drain inlets where the facility's storm water discharges may be received (Section A(4)(a)); the location of the storm water collection, conveyance and discharge system and structural control measures that affect storm water discharges (Section A(4)(b)); an outline of all impervious areas of the facility, including paved areas, buildings, covered storage areas, or other roofed

1   structures (Section (4)(c)); locations where materials are directly exposed to precipitation

2   and where significant spills or leaks have occurred (Section A(4)(d)); and areas of

3   industrial activity, including areas that are actual and potential pollutant sources (Section

4   A(4)(e)).

5        44.    Section A(5) of the Storm Water Permit requires that the SWPPP include a

6   list of significant materials handled and stored at the site.

7        45.    Section A(6)(a) of the Storm Water Permit requires that the SWPPP include

8   a narrative description of the facility's industrial activities, associated potential pollutant

9   sources, and potential pollutants that could be discharged in storm water discharges.

10       46.    Section A(6)(b) of the Storm Water Permit requires that the SWPPP include

11  a summary of all areas of industrial activities, potential pollutant sources, and potential

12  pollutants.

13       47.    Section A(7)(a) of the Storm Water Permit requires that the SWPPP include

14  a narrative assessment of all industrial activities and potential pollutant sources to

15  determine which areas of the facility are likely sources of pollutants and which pollutants

16  are likely to be present in the storm water discharges. Section A(7)(b) of the Storm Water

17  Permit requires that the SWPPP include a summary of the areas of the facility that are

18  likely sources of pollutants and the corresponding pollutants likely to be present in storm

19  water discharges.

20       48.    Section A(8) of the Storm Water Permit requires that the SWPPP include a

21  narrative description of the storm water BMPs to be implemented at the facility for each

22  potential pollutant and its source. Dischargers must develop and implement structural

23  and/or non-structural BMPs to reduce or prevent pollutants in storm water discharges.

24  Storm Water Permit, Sections A(8)(a) and (b).

25       49.    Section A(9) of the Storm Water Permit requires the discharger to evaluate

26  the SWPPP on an annual basis and revise it as necessary to ensure compliance with the

27  Storm Water Permit. Sections A(9)(a)-(c) of the Storm Water Permit also require that the

28  discharger conduct an annual comprehensive site compliance evaluation that includes a

review of all visual observation records, inspection reports, and sampling and analysis results; a visual inspection of all potential pollutant sources for evidence of, or the potential for, pollutants entering the drainage system; a review and evaluation of all BMPs to determine whether the BMPs are adequate, properly implemented and maintained, or whether additional BMPs are needed; and a visual inspection of equipment needed to implement the SWPPP. Section A(9)(d) of the Storm Water Permit requires that the discharger submit an evaluation report that includes an identification of personnel performing the evaluation, the date(s) of the evaluation(s), necessary SWPPP revisions, a schedule for implementing SWPPP revisions, any incidents of non-compliance and the corrective actions taken, and a certification that the discharger is in compliance with the Storm Water Permit. Storm Water Permit, Section A(9)(d)(i)-(vi). If certification of compliance cannot be provided, the discharger must explain in the evaluation report why the facility is not in compliance with the Storm Water Permit. *Id.*, Section A(9)(d). The evaluation report shall be submitted as part of the Annual Report required by Section B(14) of the Storm Water Permit. *Id*.

50.     Section A(10) of the Storm Water Permit requires that the discharger revise the SWPPP as necessary prior to changes in industrial activities, or as otherwise required by the Storm Water Permit.

## E.     The Storm Water Permit's Monitoring and Reporting Requirements.

51.     Provision E(3) and Section B(1) of the Storm Water Permit require dischargers to develop and implement a Monitoring and Reporting Program ("M&RP") prior to commencing industrial activities.

52.     The objectives of the M&RP are to ensure that BMPs have been adequately developed and implemented, revised when necessary, and that storm water discharges are in compliance with the Storm Water Permit's Effluent Limitations and Receiving Water Limitations. Storm Water Permit, Sections B(2)(a) and B(2)(b).

53.     The M&RP aids in the implementation and revision of the SWPPP and measures the effectiveness of BMPs to prevent or reduce pollutants in storm water

Complaint                                    11

1  discharges. Storm Water Permit, Section B(2)(c) and B(2)(d).

2      54.    Section B(2)(d) requires that the M&RP "shall be revised" as necessary to

3  ensure compliance with the Storm Water Permit.

4      55.    Section B(4)(a) of the Storm Water Permit requires dischargers to conduct

5  monthly visual observations of storm water discharges during the first hour of discharge

6  and at all discharge locations during the Wet Season (defined as October 1 – May 30).

7      56.    Section B(4)(c) of the Storm Water Permit requires dischargers to document

8  the presence of any floating and suspended materials, oil and grease, discolorations,

9  turbidity, or odor in the discharge, and the source of any pollutants in storm water

10  discharges from the facility. This same section requires dischargers to maintain records of

11  observations, observation dates, discharge locations observed, and responses taken to

12  reduce or prevent pollutants from contacting storm water discharges. Section B(4)(c) of

13  the Storm Water Permit also requires dischargers to revise the SWPPP as necessary to

14  ensure that BMPs are effectively reducing and/or eliminating pollutants at the facility.

15      57.    Sections B(5) and B(7) of the Storm Water Permit require dischargers to

16  visually observe and collect samples of storm water discharges from all locations where

17  storm water is discharged.

18      58.    Section B(5)(a) of the Storm Water Permit requires dischargers to collect

19  storm water samples during the first hour of discharge from the first storm event of the

20  Wet Season and at least one other storm event in the Wet Season. All storm water

21  discharge locations must be sampled. *See* Storm Water Permit, Section B(5)(a). Facility

22  operators that do not collect samples from the first storm event of the Wet Season are still

23  required to collect samples from two other storm events of the Wet Season and must

24  explain in the Annual Report why the first storm event was not sampled. *See id*.

25      59.    Section B(5)(b) requires that sampling conducted pursuant to the Storm

26  Water Permit occurs during scheduled facility operating hours that are preceded by at

27  least three (3) working days without storm water discharge.

28      60.    Section B(5)(c)(i) of the Storm Water Permit requires dischargers to analyze

1  each sample for pH, specific conductance ("SC"), TSS, and total organic carbon

2  ("TOC"). A discharger may substitute analysis for O&G instead of TOC.

3  61.   Section B(5)(c)(ii) of the Storm Water Permit requires dischargers to

4  analyze each sample for toxic chemicals and other pollutants likely to be present in

5  significant quantities in the storm water discharged from the facility.

6  62.   Section B(5)(c)(iii) and Table D of the Storm Water Permit require facilities

7  classified as Standard Industrial Classification ("SIC") code 3462, such as the Forged

8  Metals Facility, to also analyze storm water samples for zinc, N+N, iron, and aluminum,

9  or as required by the Regional Board.

10  63.   Section B(14) of the Storm Water Permit requires that dischargers submit an

11  Annual Report to the applicable regional board by July 1 of each year. The Annual

12  Report must include a summary of visual observations and sampling results, an

13  evaluation of the visual observations and sampling and analysis results, laboratory

14  reports, the annual comprehensive site compliance evaluation report specified in Section

15  A(9), an explanation of why a facility did not implement any activities required, and the

16  records specified in Section B(13)(i).

17  **III.     PARTIES**

18  **A.     Inland Empire Waterkeeper and Orange County Coastkeeper.**

19  64.   Orange County Coastkeeper is a non-profit public benefit corporation

20  organized under the laws of the State of California. Orange County Coastkeeper's office

21  is located at 3151 Airway Avenue, Suite F-110, Costa Mesa, California 92626.

22  65.   Inland Empire Waterkeeper is a program of Orange County Coastkeeper.

23  Inland Empire Waterkeeper's office is located at 6876 Indiana Avenue, Suite D,

24  Riverside, California 92506.

25  66.   Together, Inland Empire Waterkeeper and Orange County Coastkeeper have

26  over 2,000 members who live and/or recreate in and around the Santa Ana River

27  watershed. Waterkeeper is dedicated to the preservation, protection, and defense of the

28  environment, wildlife, and natural resources of local surface waters. To further these

Complaint                                    13

goals, Waterkeeper actively seeks federal and state agency implementation of the Clean Water Act and, where necessary, directly initiates enforcement actions on behalf of itself and others.

67.    Waterkeeper's members use and enjoy the Santa Ana River and its tributaries for fishing, boating, swimming, bird watching, picnicking, viewing wildlife, sailing, kayaking, hiking, and engaging in scientific study, including monitoring activities.

68.    Discharges of polluted storm water from the Forged Metals Facility degrade water quality and harm aquatic life in the Santa Ana River and its tributaries, and impair Waterkeeper's members' use and enjoyment of those waters.

69.    The violations of the Storm Water Permit and Clean Water Act at the Forged Metals Facility are ongoing and continuous. Thus, the interests of Waterkeeper's members have been, are being, and will continue to be adversely affected by Defendant's failure to comply with the Storm Water Permit and the Clean Water Act.

**B.    The Forged Metals Facility Owner and/or Operator.**

70.    Waterkeeper is informed and believes, and thereon alleges, that Forged Metals, Inc. is an owner of the Forged Metals Facility.

71.    Waterkeeper is informed and believes, and thereon alleges, that Forged Metals, Inc. has owned the Forged Metals Facility since at least May 25, 2009.

72.    Waterkeeper is informed and believes, and thereon alleges, that Forged Metals, Inc. is an operator of the Forged Metals Facility.

73.    Waterkeeper is informed and believes, and thereon alleges, that Forged Metals, Inc. has operated the Forged Metals Facility since at least May 25, 2009.

74.    Waterkeeper refers to Forged Metals, Inc. herein as the "Forged Metals Facility Owner and/or Operator."

75.    Waterkeeper is informed and believes, and thereon alleges, that Forged Metals, Inc. is an active corporation registered in California.

76.    Waterkeeper is informed and believes, and thereon alleges, that the name

1   and address of the Registered Agent for Forged Metals, Inc. is National Corporate

2   Research, Ltd., located at 523 W. 6th Street, Suite 544, Los Angeles, California 90014.

3   **IV.     FACTUAL BACKGROUND**

4          **A.     Facility Site Description.**

5          77.     Waterkeeper is informed and believes, and thereon alleges, that the Forged

6   Metals Facility Owner and/or Operator manufactures metal rings for the aerospace

7   industry and produces customized metal forgings for a number of other products,

8   including prosthetic surgery, land-based gas turbines, and diesel engines.

9          78.     Waterkeeper is informed and believes, and thereon alleges, that there are at

10  least seven (7) buildings at the Facility: four (4) office buildings, a heat treatment

11  building, a building that houses the machine shop as well as an area for scrap storage, and

12  a large building for all of the forging processes, including steam cleaning, grinding, waste

13  water treatment, and forging.

14         79.     Waterkeeper is informed and believes, and thereon alleges, that the Facility

15  SWPPP site map does not indicate all buildings and other impervious areas of the Forged

16  Metals Facility, including, for example, the large building for the forging processes.

17         80.     Waterkeeper is informed and believes, and thereon alleges, that the Facility

18  SWPPP site map does not label all buildings and other impervious areas of the Forged

19  Metals Facility, including, for example, the four (4) office buildings described in the

20  Facility SWPPP.

21         81.     Waterkeeper is informed and believes, and thereon alleges, that there are

22  three (3) parking lots at the Forged Metals Facility.

23         82.     Waterkeeper is informed and believes, and thereon alleges, that the North

24  Parking Lot is located between four buildings that are not labeled on the Facility SWPPP

25  site map and the shipping and receiving area.

26         83.     Waterkeeper is informed and believes, and thereon alleges, that the Center

27  Parking Lot is located south and east of the Enjoy Foods International Building.

28         84.     Waterkeeper is informed and believes, and thereon alleges, that the South

Complaint                                    15

1 Parking Lot is located west of the building that houses the machine shop and scrap metal
2 storage area.

3     85.   Waterkeeper is informed and believes, and thereon alleges, that the Facility
4 includes an outdoor shipping and receiving area.

5     86.   The narrative portion of the Facility SWPPP states that, due to a lack of
6 enclosed floor space, raw and unprocessed materials are stored outdoors around the
7 Facility.

8     87.   Waterkeeper is informed and believes, and thereon alleges, that the Facility
9 includes uncovered areas throughout the Facility where unprocessed materials are stored.

10     88.   Waterkeeper is informed and believes, and thereon alleges, that uncovered
11 racks holding new and used metal objects are stored outdoors at the Facility.

12     89.   Waterkeeper is informed and believes, and thereon alleges, that the SWPPP
13 site map does not indicate any locations where materials are directly exposed to
14 precipitation at the Facility.

15     90.   The Facility is bordered by Beech Avenue on the west, an unrelated parking
16 lot on the south, and other industrial facilities on the east and north.

17     91.   Waterkeeper is informed and believes, and thereon alleges, that a large
18 building owned by Enjoy Foods International is located in the middle of the Facility,
19 north of the Center Parking Lot and south of the shipping and receiving area.

20     92.   Waterkeeper is informed and believes, and thereon alleges, that the Facility
21 SWPPP site map does not indicate where the Forged Metals Facility's boundaries are
22 located.

23     93.   Waterkeeper is informed and believes, and thereon alleges, that there are no
24 physical barriers between the Enjoy Foods International property, the other industrial
25 facilities, and the Forged Metals Facility.

26     94.   The Facility SWPPP states that the Central Parking Lot "will also receive
27 runoff from the roof of the Enjoy Foods Building."

28     95.   Waterkeeper is informed and believes, and thereon alleges, that the Facility

SWPPP site map does not include the portions of the drainage areas impacted by run-on from surrounding areas.

96.     Waterkeeper is informed and believes, and thereon alleges, that the points of egress/ingress to the Forged Metals Facility include two (2) driveways leading to Beech Avenue.

97.     Waterkeeper is informed and believes, and thereon alleges, that one driveway is located on the western end of the North Parking Lot and leads from the shipping and receiving area to Beech Avenue.

98.     Waterkeeper is informed and believes, and thereon alleges, that the second driveway is located at the western end of the Center Parking Lot.

**B.     The Forged Metals Facility's Storm Water Permit Coverage.**

99.     Information available to Waterkeeper indicates that the Forged Metals Facility Owner and/or Operator submitted an NOI for the Facility on or about May 26, 1992 ("1992 NOI").

100.    Information available to Waterkeeper indicates that the Forged Metals Facility Owner and/or Operator submitted a NOI for Existing Facility Operators on or about February 24, 1998 ("1998 NOI").

101.    Information available to Waterkeeper indicates that a third NOI is also on file with the State Board for the Forged Metals Facility that is dated June 23, 2010 ("2010 NOI").

102.    The 1992 NOI, 1998 NOI, and 2010 NOI list the Facility location as "10685 Beech Avenue, Fontana, CA 92337."

103.    The 1992 NOI, 1998 NOI, and 2010 NOI list the Facility operator as "Forged Metals Inc."

104.    The State Board's electronic database, called the Storm Water Multiple Application & Report Tracking System ("SMARTS"), lists the current Forged Metals Facility Waste Discharge Identification ("WDID") number as 8-36I007116.

105.    SMARTS lists the Forged Metals Facility's coverage under the Storm Water

Permit as "Active."

106.   Information available to Waterkeeper indicates that the 1992 NOI, 1998 NOI, and 2010 NOI list the SIC code for the Forged Metals Facility as 3462 (Iron and Steel Forgings).

107.   Facilities classified as SIC code 3462 are covered by the Storm Water Permit in areas where industrial materials, equipment, or activities are exposed to storm water. *See* Storm Water Permit, Attachment 1.

108.   Chapter 2 of the Facility SWPPP states that the outdoor shipping and receiving area of the Facility is used to unload raw materials and upload finished products for shipping off-site.

109.   Chapter 2 of the Facility SWPPP states that the Forged Metals Facility Owner and/or Operator "resorts to storing much of its unprocessed material outdoors at various locations around the facility" and "[t]his is the main source of storm water pollution at the facility."

110.   Waterkeeper is informed and believes, and thereon alleges, that industrial materials, equipment, and activities are exposed to storm water at the Forged Metals Facility, including loading of raw materials and finished products and storage of unprocessed materials, equipment, and scrap materials.

111.   Waterkeeper is informed and believes, and thereon alleges, that the areas at the Facility where industrial materials, equipment, and/or activities are exposed to storm water require Storm Water Permit coverage.

112.   Chapter 2 of the Facility SWPPP states that the Facility includes a "heat treatment area" where metals are annealed, hardened, and/or quenched.

113.   Waterkeeper has observed and photographed, and on this basis alleges, activity occurring in the heat treatment area, including use of the Heat Treatment Building and forklifts driving in and out of the Heat Treatment Building.

114.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator conducts metal heat treating at the Facility.

115.   Waterkeeper is informed and believes, and thereon alleges, that SIC code 3398 (Metal Heat Treating) also applies to the Forged Metals Facility.

116.   A facility classified as SIC code 3398 requires Storm Water Permit coverage for the entire facility. Storm Water Permit, Attachment 1, Section 4.

117.   Waterkeeper is informed and believes, and thereon alleges, that the entire Forged Metals Facility requires Storm Water Permit coverage because the industrial activities at the Facility are classified as SIC code 3398.

118.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility is approximately eight (8) acres in size.

119.   The 1992 NOI indicates that the Forged Metals Facility Owner and/or Operator applied for Storm Water Permit coverage for six (6) acres of the Facility.

120.   The 2010 NOI indicates that the Forged Metals Facility Owner and/or Operator applied for Storm Water Permit coverage for eight (8) acres of the Facility.

**C.     Defendant's SWPPP and M&RP for the Forged Metals Facility.**

121.   In a February 11, 2014 letter to the Forged Metals Facility Owner and/or Operator, the Regional Board requested a copy of the current Facility SWPPP.

122.   On or about February 12, 2014, the Regional Board provided Waterkeeper with a copy of the SWPPP that it received from the Forged Metals Facility Owner and/or Operator in response to its February 11, 2014 letter.

123.   The SWPPP provided to Waterkeeper by the Regional Board on or about February 12, 2014 is dated October 11, 2007.

124.   Waterkeeper is informed and believes, and thereon alleges, that the SWPPP dated October 11, 2007 is the current SWPPP for the Facility ("Facility SWPPP").

**D.     Industrial Activities, Pollutant Sources, Pollutants, and BMPs at the Forged Metals Facility.**

125.   Waterkeeper is informed and believes, and thereon alleges, that the Facility's industrial activities and areas of industrial activity are pollutant sources.

126.   Waterkeeper is informed and believes, and thereon alleges, that the

Facility's industrial activities and areas include, but are not limited to: aluminum, nickel-based superalloy, titanium, and steel alloy manufacturing, honing, and processing; metal grinding and forging; shipping, receiving, and moving products around the Facility; equipment and vehicle maintenance, cleaning, and storage; unloading raw materials; loading finished products; heat treatment; steam cleaning; waste water treatment; hazardous waste storage; and unprocessed material and scrap metal storage.

127.   Waterkeeper is informed and believes, and thereon alleges, that the Facility SWPPP site map does not include all areas of industrial activity at the Facility.

128.   Waterkeeper is informed and believes, and thereon alleges, that the Facility SWPPP site map does not include the locations where unprocessed materials are stored outdoors at the Forged Metals Facility.

129.   Waterkeeper is informed and believes, and thereon alleges, that the Facility SWPPP site map does not include the locations of all forging areas at the Forged Metals Facility.

130.   Waterkeeper is informed and believes, and thereon alleges, that industrial activities occur throughout the Forged Metals Facility outdoors without adequate cover to prevent storm water exposure to pollutant sources.

131.   Waterkeeper is informed and believes, and thereon alleges, that industrial activities occur throughout the Forged Metals Facility outdoors without secondary containment or other adequate treatment measures to prevent polluted storm water from discharging from the Facility.

132.   Chapter 1 of the Facility SWPPP lists the employee title responsible for implementing BMPs in each area of the Forged Metals Facility.

133.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility SWPPP does not identify the specific individuals responsible for implementing the Facility SWPPP.

134.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility SWPPP does not clearly identify the Storm Water Permit-related

responsibilities, duties, and activities of each employee responsible for implementing the Facility SWPPP.

135.   Chapters 2 and 3 of the Facility SWPPP provide brief descriptions of the areas where industrial activities are conducted at the Facility.

136.   Waterkeeper is informed and believes, and thereon alleges, that the Facility SWPPP does not describe all of the industrial activities that occur at the Forged Metals Facility.

137.   Waterkeeper is informed and believes, and thereon alleges, that the Facility SWPPP states that "the first stage of the finishing process occurs" in the Grinding Area, but does not describe any activities that are conducted as part of this process.

138.   Waterkeeper is informed and believes, and thereon alleges, that the Facility SWPPP states that wastewater treatment occurs at the Facility, but does not describe any of the activities that are conducted as part of this process.

139.   Waterkeeper is informed and believes, and thereon alleges, that the Facility SWPPP states that quenching operations occur at the Facility, but does not describe any of the activities that are conducted as part of this process.

140.   Waterkeeper is informed and believes, and thereon alleges, that the Facility SWPPP states that cooling operations occur at the Facility, but does not describe any of the activities that are conducted as part of this process.

141.   Waterkeeper is informed and believes, and thereon alleges, that because the Facility SWPPP fails to describe all of the Facility's industrial activities, the Facility SWPPP also fails to describe all of the significant materials and processes that are related to the Facility's industrial activities.

142.   Waterkeeper is informed and believes, and thereon alleges, that pollutants associated with the Forged Metals Facility include, but are not limited to: O&G; metals, including, but not limited to, aluminum, iron, lead, copper, nickel, and zinc; TSS; N+N; trash and debris; gas, diesel, fuel, and fuel additives; fugitive and other dust and dirt; and pH-affecting substances.

143.   Chapter 3 of the Facility SWPPP lists areas of industrial activity at the Forged Metals Facility, but only generally describes the potential pollutants associated with these areas, such as "a lot of chemicals," "metals and other contaminants," and "various lubricants."

144.   The Forged Metals Facility Owner and/or Operator reports in the Facility SWPPP that cooling water may leak from the cooling water system onto the asphalt outside that "could cause contamination to storm water."

145.   Waterkeeper is informed and believes, and thereon alleges, that the Facility SWPPP does not list any specific pollutants that are associated with specific industrial activities or areas at the Forged Metals Facility.

146.   Waterkeeper is informed and believes, and thereon alleges, that the Facility SWPPP does not list the potential pollutants that are in the cooling water that can leak outside.

147.   Chapter 4 of the Facility SWPPP states that "Worksheet 2 (Shown in the appendix) lists the materials that have the potential to come in contact with storm water during a storm event."

148.   Waterkeeper is informed and believes, and thereon alleges, that the Facility SWPPP does not include Worksheet 2 or any other section that lists all of the significant materials handled and stored at the Forged Metals Facility.

149.   Waterkeeper is informed and believes, and thereon alleges, that because all significant materials have not been identified, the Facility SWPPP fails to describe the locations where the materials are stored, received, shipped, and handled, or the typical quantities and frequency of significant materials at the Forged Metals Facility.

150.   Chapter 3 of the Facility SWPPP states that "The Grinding Area produces a large amount of metal powders and shavings."

151.   Waterkeeper is informed and believes, and thereon alleges, that the Scrap Area includes metal shavings and powders.

152.   Waterkeeper is informed and believes, and thereon alleges, that the Facility

SWPPP does not identify the characteristics, approximate quantity, or discharge locations of these dust and particulate pollutants.

153. Table 5-1 of the Facility SWPPP identifies the BMPs for the areas of industrial activity at the Facility.

154. Waterkeeper is informed and believes, and thereon alleges, that neither Table 5-1 nor any other section of the Facility SWPPP describes adequate BMPs to reduce or prevent pollutants in the Facility's discharges.

155. Waterkeeper is informed and believes, and thereon alleges, that the Facility SWPPP includes no summary of all areas of industrial activities and the potential pollutants in a table resembling Table B in Section A(6)(b) of the Storm Water Permit.

156. Waterkeeper is informed and believes, and thereon alleges, that without properly identifying all industrial activities at the Facility in the SWPPP, the Forged Metals Facility Owner and/or Operator cannot and has not developed all appropriate BMPs.

157. Waterkeeper is informed and believes, and thereon alleges, that without properly identifying all industrial activities at the Facility in the SWPPP, the Forged Metals Facility Owner and/or Operator cannot and has not implemented all appropriate BMPs.

158. Waterkeeper is informed and believes, and thereon alleges, that without properly identifying all significant materials at the Facility in the SWPPP, the Forged Metals Facility Owner and/or Operator cannot and has not developed all appropriate BMPs.

159. Waterkeeper is informed and believes, and thereon alleges, that without properly identifying all significant materials at the Facility in the SWPPP, the Forged Metals Facility Owner and/or Operator cannot and has not implemented all appropriate BMPs.

160. Waterkeeper is informed and believes, and thereon alleges, that the Facility SWPPP does not include an assessment of potential pollutant sources at the Facility.

1    161.   Waterkeeper is informed and believes, and thereon alleges, that the Forged
2    Metals Facility Owner and/or Operators has failed and continues to fail to assess
3    pollutants associated with potential pollutant sources at the Facility.

4    162.   Waterkeeper is informed and believes, and thereon alleges, that the Facility
5    SWPPP does not include an assessment of pollutants associated with potential pollutant
6    sources at the Facility.

7    163.   Waterkeeper is informed and believes, and thereon alleges, that the Forged
8    Metals Facility Owner and/or Operators has failed and continues to fail to assess the
9    Facility's BMPs corresponding to potential pollutant sources and associated pollutants.

10   164.   Waterkeeper is informed and believes, and thereon alleges, that the Facility
11   SWPPP does not include an assessment of the Facility's BMPs corresponding to potential
12   pollutant sources and associated pollutants.

13   165.   Waterkeeper is informed and believes, and thereon alleges, that the Forged
14   Metals Facility Owner and/or Operators has failed and continues to fail to assess potential
15   pollutant sources at the Facility.

16   166.   Waterkeeper is informed and believes, and thereon alleges, that the Facility
17   SWPPP does not include an adequate description of the Facility BMPs.

18   167.   Waterkeeper is informed and believes, and thereon alleges, that the Forged
19   Metals Facility Owner and/or Operators has failed and continues to fail to analyze the
20   effectiveness of the BMPs at the Facility.

21   168.   Waterkeeper is informed and believes, and thereon alleges, that the Facility
22   SWPPP does not include an adequate analysis of the effectiveness of the BMPs at the
23   Facility.

24   169.   Waterkeeper is informed and believes, and thereon alleges, that the Facility
25   SWPPP does not include an adequate summary of the BMPs by pollutant source.

26   170.   Waterkeeper is informed and believes, and thereon alleges, that storm water
27   sampling at the Facility demonstrates that the Forged Metals Facility's storm water
28   discharges contain concentrations of pollutants above the Benchmark Levels, including,

but not limited to, zinc, N+N, iron, aluminum, SC, TSS, O&G, chemical oxygen demand ("COD"), and copper.

171. Waterkeeper is informed and believes, and thereon alleges, that the repeated and significant exceedances of Benchmark Levels demonstrate that the Forged Metals Facility Owner and/or Operator failed and continues to fail to develop BMPs to prevent the exposure of pollutants to storm water, and to prevent discharges of polluted storm water from the Facility.

172. Waterkeeper is informed and believes, and thereon alleges, that the repeated and significant exceedances of Benchmark Levels demonstrate that the Forged Metals Facility Owner and/or Operator failed and continues to fail to implement BMPs to prevent the exposure of pollutants to storm water, and to prevent discharges of polluted storm water from the Facility.

173. Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator has failed and continues to fail to adequately revise the SWPPP, despite repeated and significant concentrations of pollutants in the Facility's storm water discharges, changes to the Facility's training program, and other changes and events requiring revision.

**E.    Discharge Locations at the Forged Metals Facility.**

174. The Forged Metals Facility Owner and/or Operator states in the Facility SWPPP that there is one (1) discharge point at the Forged Metals Facility, which is located in the southwest corner of the Facility near the South Parking Lot and is identified on the Facility SWPPP site map as "#6 Main Drain."

175. The Facility SWPPP states that storm water from the Facility is routed through underground piping or by gutters and gravity to #6 Main Drain.

176. Waterkeeper is informed and believes, and thereon alleges, that there are at least two (2) other discharge points at the Facility, referred to herein as Discharge Point #2 and Discharge Point #3.

177. Waterkeeper has observed, sampled, and photographed, and on that basis

Complaint                                                  25

alleges, that Discharge Point #2 located in the southwestern corner of the Facility, south of #6 Main Drain, and is identified on the Facility SWPPP site map as "#5 South."

178.   Waterkeeper is informed and believes, and thereon alleges, that Discharge Point #3 is the driveway that leads from the North Parking Lot to Beech Avenue.

179.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility SWPPP site map does not include an outline of all storm water drainage areas within the Facility boundaries.

180.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility SWPPP site map does not identify all discharge points.

181.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility SWPPP site map does not include structural control measures that affect storm water discharges.

182.   Waterkeeper is informed and believes, and thereon alleges, that the pollutants associated with the Facility have been and continue to be tracked throughout the Facility.

183.   Waterkeeper is informed and believes, and thereon alleges, that trucks and vehicles track sediment, dirt, oil and grease, metal particles, and other pollutants off-site via the driveways from the Center Parking Lot and North Parking Lot to Beech Avenue.

**F.   The Forged Metals Facility's Discharges to the Receiving Waters.**

184.   Waterkeeper is informed and believes, and thereon alleges, that pollutants from the Forged Metals Facility discharge from #6 Main Drain, Discharge Point #2, and Discharge Point #3 to the municipal separate storm sewer system, which flows to the Santa Ana River and its tributaries (collectively the "Receiving Waters").

185.   Waterkeeper is informed and believes, and thereon alleges, that each of the Receiving Waters is a water of the United States.

186.   Waterkeeper is informed and believes, and thereon alleges, that polluted storm water discharges from the Forged Metals Facility to the Receiving Waters.

///

### G.    Defendant's Sampling, Monitoring, and Reporting.

187.    Via a Public Records Act request to the Regional Board, Waterkeeper obtained an Annual Report for the Facility dated July 1, 2009.

188.    Waterkeeper is informed and believes, and thereon alleges, that the Annual Report dated July 1, 2009 obtained from the Regional Board is the 2008-2009 Annual Report for the Facility.

189.    Via a Public Records Act request to the Regional Board, Waterkeeper obtained an Annual Report for the Facility dated June 25, 2010.

190.    Waterkeeper is informed and believes, and thereon alleges, that the Annual Report dated June 25, 2010 obtained from the Regional Board is the 2009-2010 Annual Report for the Facility.

191.    In response to Waterkeeper's Public Records Act request, the Regional Board did not produce a 2010-2011 Annual Report for the Facility.

192.    Via a Public Records Act request to the Regional Board, Waterkeeper obtained a copy of a storm water sample laboratory report for a sample collected on October 30, 2010.

193.    Waterkeeper is informed and believes, and thereon alleges, that the October 30, 2010 laboratory report was submitted to the Regional Board as evidence of the Forged Metals Facility Owner's and/or Operator's storm water sampling during the 2010-2011 Wet Season.

194.    Via a Public Records Act request to the Regional Board, Waterkeeper obtained an Annual Report for the Facility dated June 29, 2012.

195.    Waterkeeper is informed and believes, and thereon alleges, that the Annual Report dated June 29, 2012 obtained from the Regional Board is the 2011-2012 Annual Report for the Facility.

196.    Via a Public Records Act request to the Regional Board, Waterkeeper obtained an Annual Report for the Facility dated June 26, 2013.

197.    Waterkeeper is informed and believes, and thereon alleges, that the Annual

Report dated June 26, 2013 obtained from the Regional Board is the 2012-2013 Annual Report for the Facility.

198.   Via a request to the Regional Board, Waterkeeper obtained an Annual Report for the Facility dated June 9, 2014.

199.   Waterkeeper is informed and believes, and thereon alleges, that the Annual Report dated June 9, 2014 obtained from the Regional Board is the 2013-2014 Annual Report for the Facility.

200.   Waterkeeper refers to the above-described 2008-2009 Annual Report, 2009-2010 Annual Report, 2011-2012 Annual Report, 2012-2013 Annual Report, and 2013-2014 Annual Report collectively as Defendant's "Annual Reports."

201.   Waterkeeper is informed and believes, and thereon alleges, that since at least May 25, 2009, the Forged Metals Facility Owner and/or Operator failed to conduct required non-storm water visual observations at each of its drainage areas. *See* Annual Reports.

202.   Waterkeeper is informed and believes, and thereon alleges, that since at least May 25, 2009, the Forged Metals Facility Owner and/or Operator failed to conduct required storm water visual observations at each of its discharge points. *See* Annual Reports.

203.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to include the required summary of its quarterly visual observations of unauthorized non-storm water discharges for each of its drainage areas in the 2008-2009 Annual Report.

204.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to include the required evaluation of its quarterly visual observations of unauthorized non-storm water discharges for each of its drainage areas in the 2008-2009 Annual Report.

205.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to include the required summary of its

quarterly visual observations of authorized non-storm water discharges for each of its discharge points in the 2008-2009 Annual Report.

206.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to include the required evaluation of its quarterly visual observations of authorized non-storm water discharges for each of its discharge points in the 2008-2009 Annual Report.

207.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to include the required summary of its quarterly visual observations of unauthorized non-storm water discharges for each of its drainage areas in the 2009-2010 Annual Report.

208.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to include the required evaluation of its quarterly visual observations of unauthorized non-storm water discharges for each of its drainage areas in the 2009-2010 Annual Report.

209.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to include the required summary of its quarterly visual observations of authorized non-storm water discharges for each of its discharge points in the 2009-2010 Annual Report.

210.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to include the required evaluation of its quarterly visual observations of authorized non-storm water discharges for each of its discharge points in the 2009-2010 Annual Report.

211.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to include the required summary of its monthly visual observations of storm water discharges for each of its discharge points in the 2009-2010 Annual Report.

212.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to include the required evaluation of its

monthly visual observations of storm water discharges for each of its discharge points in the 2009-2010 Annual Report.

213.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to submit an Annual Report for the Forged Metals Facility for the 2010-2011 Wet Season.

214.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to include the required summary of its quarterly visual observations of unauthorized non-storm water discharges for each of its drainage areas in the 2011-2012 Annual Report.

215.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to include the required evaluation of its quarterly visual observations of unauthorized non-storm water discharges for each of its drainage areas in the 2011-2012 Annual Report.

216.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to include the required summary of its quarterly visual observations of authorized non-storm water discharges for each of its discharge points in the 2011-2012 Annual Report.

217.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to include the required evaluation of its quarterly visual observations of authorized non-storm water discharges for each of its discharge points in the 2011-2012 Annual Report.

218.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to include the required summary of its quarterly visual observations of unauthorized non-storm water discharges for each of its drainage areas in the 2012-2013 Annual Report.

219.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to include the required evaluation of its quarterly visual observations of unauthorized non-storm water discharges for each of its

drainage areas in the 2012-2013 Annual Report.

220.    Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to include the required summary of its quarterly visual observations of authorized non-storm water discharges for each of its discharge points in the 2012-2013 Annual Report.

221.    Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to include the required evaluation of its quarterly visual observations of authorized non-storm water discharges for each of its discharge points in the 2012-2013 Annual Report.

222.    Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to include the required summary of its quarterly visual observations of unauthorized non-storm water discharges for each of its drainage areas in the 2013-2014 Annual Report.

223.    Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to include the required evaluation of its quarterly visual observations of unauthorized non-storm water discharges for each of its drainage areas in the 2013-2014 Annual Report.

224.    Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to include the required summary of its quarterly visual observations of authorized non-storm water discharges for each of its discharge points in the 2013-2014 Annual Report.

225.    Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to include the required evaluation of its quarterly visual observations of authorized non-storm water discharges for each of its discharge points in the 2013-2014 Annual Report.

226.    Waterkeeper is informed and believes, and thereon alleges, since at least May 25, 2009, the Forged Metals Facility Owner and/or Operator failed to document the presence of any floating and suspended material, O&G, discolorations, turbidity, odor,

and source of pollutants at the unobserved discharge points. *See* Annual Reports.

227. Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to include the required summary of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at the unobserved discharge points in the 2008-2009 Annual Report.

228. Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to include the required evaluation of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at the unobserved discharge points in the 2008-2009 Annual Report.

229. Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to include the required summary of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at the unobserved discharge points in the 2009-2010 Annual Report.

230. Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to include the required evaluation of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at the unobserved discharge points in the 2009-2010 Annual Report.

231. Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to include the required summary of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at the unobserved discharge points in the 2011-2012 Annual Report.

232. Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to include the required evaluation of the

presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at the unobserved discharge points in the 2011-2012 Annual Report.

233.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to include the required summary of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at the unobserved discharge points in the 2012-2013 Annual Report.

234.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to include the required evaluation of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at the unobserved discharge points in the 2012-2013 Annual Report.

235.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to include the required summary of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at the unobserved discharge points in the 2013-2014 Annual Report.

236.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to include the required evaluation of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at the unobserved discharge points in the 2013-2014 Annual Report.

237.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to indicate the location of non-storm water visual observations to document which discharge areas were observed in the 2008-2009 Annual Report.

238.   Waterkeeper is informed and believes, and thereon alleges, that the Forged

Metals Facility Owner and/or Operator failed to indicate the location of non-storm water visual observations to document which discharge areas were observed in the 2009-2010 Annual Report.

239.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to indicate the location of non-storm water visual observations to document which discharge areas were observed in the 2011-2012 Annual Report.

240.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to indicate the location of non-storm water visual observations to document which discharge areas were observed in the 2012-2013 Annual Report.

241.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to indicate the location of non-storm water visual observations to document which discharge areas were observed in the 2013-2014 Annual Report.

242.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to include the records required by Section B(3) of the Storm Water Permit for the quarterly visual observations of unauthorized non-storm water discharges in the 2009-2010 Annual Report.

243.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to include the records required by Section B(3) of the Storm Water Permit for the quarterly visual observations of unauthorized non-storm water discharges in the 2011-2012 Annual Report.

244.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to include the records required by Section B(4) of the Storm Water Permit for the monthly visual observations of storm water discharges in the 2009-2010 Annual Report.

245.   Waterkeeper is informed and believes, and thereon alleges, that during the

Complaint                                      34

2008-2009 Wet Season the Forged Metals Facility Owner and/or Operator failed to collect any storm water samples, despite the occurrence of at least two qualifying rain events in the 2008-2009 Wet Season.

246.    Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator did not report any storm water samples in its 2008-2009 Annual Report, despite the occurrence of at least two qualifying rain events in that Wet Season.

247.    Waterkeeper is informed and believes, and thereon alleges, that during the 2009-2010 Wet Season the Forged Metals Facility Owner and/or Operator only collected one storm water sample, despite the occurrence of more than one qualifying rain event in the 2009-2010 Wet Season.

248.    Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator reported only one storm water sample in its 2009-2010 Annual Report, despite the occurrence of more than one qualifying rain event in that Wet Season.

249.    Waterkeeper is informed and believes, and thereon alleges, that during the 2012-2013 Wet Season the Forged Metals Facility Owner and/or Operator failed to collect any storm water samples, despite the occurrence of at least two qualifying rain events in the 2012-2013 Wet Season.

250.    Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator did not report any storm water samples in its 2012-2013 Annual Report, despite the occurrence of at least two qualifying rain events in that Wet Season.

251.    Waterkeeper is informed and believes, and thereon alleges, that during the 2013-2014 Wet Season the Forged Metals Facility Owner and/or Operator only collected one storm water sample, despite the occurrence of more than one qualifying rain event in the 2013-2014 Wet Season.

252.    Waterkeeper is informed and believes, and thereon alleges, that the Forged

1 Metals Facility Owner and/or Operator reported only one storm water sample in its 2013-
2 2014 Annual Report, despite the occurrence of more than one qualifying rain event in
3 that Wet Season.

4     253. Waterkeeper is informed and believes, and thereon alleges, that the Forged
5 Metals Facility Owner and/or Operator failed to include the required summary of
6 sampling results for all Facility discharge points in the 2008-2009 Annual Report.

7     254. Waterkeeper is informed and believes, and thereon alleges, that the Forged
8 Metals Facility Owner and/or Operator failed to include the required summary of
9 sampling results for all Facility discharge points in the 2012-2013 Annual Report.

10     255. Waterkeeper is informed and believes, and thereon alleges, that the Forged
11 Metals Facility Owner and/or Operator failed to analyze all storm water samples
12 collected for all required parameters, including pollutants likely to be present in the
13 Forged Metals Facility storm water discharges in significant quantities, such as copper
14 and nickel, during the 2009-2010 Wet Season.

15     256. Waterkeeper is informed and believes, and thereon alleges, that the Forged
16 Metals Facility Owner and/or Operator failed to analyze all storm water samples
17 collected for all required parameters, including pollutants likely to be present in the
18 Forged Metals Facility storm water discharges in significant quantities, such as copper
19 and nickel, during the 2010-2011 Wet Season.

20     257. Waterkeeper is informed and believes, and thereon alleges, that the Forged
21 Metals Facility Owner and/or Operator failed to analyze all storm water samples
22 collected for all required parameters, including pollutants likely to be present in the
23 Forged Metals Facility storm water discharges in significant quantities, such as copper
24 and nickel, during the 2011-2012 Wet Season.

25     258. Waterkeeper is informed and believes, and thereon alleges, that the Forged
26 Metals Facility Owner and/or Operator failed to analyze all storm water samples
27 collected for all required parameters, including pollutants likely to be present in the
28 Forged Metals Facility storm water discharges in significant quantities, such as copper

1   and nickel, during the 2013-2014 Wet Season.

2       259.   Waterkeeper is informed and believes, and thereon alleges, that the Forged

3   Metals Facility Owner and/or Operator certified that the Facility was in compliance with

4   the Storm Water Permit in its 2008-2009 Annual Report.

5       260.   Waterkeeper is informed and believes, and thereon alleges, that the Forged

6   Metals Facility Owner's and/or Operator's certification of compliance in the 2008-2009

7   Annual Report was false because the Forged Metals Facility Owner and/or Operator had

8   not revised the Facility SWPPP to achieve compliance with the Storm Water Permit.

9       261.   Waterkeeper is informed and believes, and thereon alleges, that the Forged

10  Metals Facility Owner's and/or Operator's certification of compliance in the 2008-2009

11  Annual Report was false because the Forged Metals Facility Owner and/or Operator had

12  not revised the Facility M&RP to achieve compliance with the Storm Water Permit.

13      262.   Waterkeeper is informed and believes, and thereon alleges, that the Forged

14  Metals Facility Owner and/or Operator failed to describe instances of the Facility's

15  noncompliance with the Storm Water Permit in its 2008-2009 Annual Report.

16      263.   Waterkeeper is informed and believes, and thereon alleges, that the Forged

17  Metals Facility Owner and/or Operator failed to include descriptions of steps taken to

18  prevent recurrence of its noncompliance with the Storm Water Permit in its 2008-2009

19  Annual Report.

20      264.   Waterkeeper is informed and believes, and thereon alleges, that the Forged

21  Metals Facility Owner and/or Operator certified that the Facility was in compliance with

22  the Storm Water Permit in its 2009-2010 Annual Report.

23      265.   Waterkeeper is informed and believes, and thereon alleges, that the Forged

24  Metals Facility Owner's and/or Operator's certification of compliance in the 2009-2010

25  Annual Report was false because the Forged Metals Facility Owner and/or Operator had

26  not revised the Facility SWPPP to achieve compliance with the Storm Water Permit.

27      266.   Waterkeeper is informed and believes, and thereon alleges, that the Forged

28  Metals Facility Owner's and/or Operator's certification of compliance in the 2009-2010

Complaint                          37

Annual Report was false because the Forged Metals Facility Owner and/or Operator had not revised the Facility M&RP to achieve compliance with the Storm Water Permit.

267. Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to describe instances of the Facility's noncompliance with the Storm Water Permit in its 2009-2010 Annual Report.

268. Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to include descriptions of steps taken to prevent recurrence of its noncompliance with the Storm Water Permit in its 2009-2010 Annual Report.

269. Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator certified that the Facility was in compliance with the Storm Water Permit in its 2011-2012 Annual Report.

270. Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner's and/or Operator's certification of compliance in the 2011-2012 Annual Report was false because the Forged Metals Facility Owner and/or Operator had not revised the Facility SWPPP as required by the Storm Water Permit.

271. Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner's and/or Operator's certification of compliance in the 2011-2012 Annual Report was false because the Forged Metals Facility Owner and/or Operator had not revised the Facility M&RP as required by the Storm Water Permit.

272. Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to describe instances of the Facility's noncompliance with the Storm Water Permit in its 2011-2012 Annual Report.

273. Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to include descriptions of steps taken to prevent recurrence of its noncompliance with the Storm Water Permit in its 2011-2012 Annual Report.

274. Waterkeeper is informed and believes, and thereon alleges, that the Forged

1  Metals Facility Owner and/or Operator failed to collect storm water samples from at least
2  two storm events during the 2012-2013 Wet Season, despite the occurrence of qualifying
3  rain events.

4      275.   Waterkeeper is informed and believes, and thereon alleges, that the Forged
5  Metals Facility Owner and/or Operator certified that the Facility was in compliance with
6  the Storm Water Permit in its 2012-2013 Annual Report.

7      276.   Waterkeeper is informed and believes, and thereon alleges, that the Forged
8  Metals Facility Owner's and/or Operator's certification of compliance in the 2012-2013
9  Annual Report was false because the Forged Metals Facility Owner and/or Operator had
10 not revised the Facility SWPPP as required by the Storm Water Permit.

11     277.   Waterkeeper is informed and believes, and thereon alleges, that the Forged
12 Metals Facility Owner's and/or Operator's certification of compliance in the 2012-2013
13 Annual Report was false because the Forged Metals Facility Owner and/or Operator had
14 not revised the Facility M&RP as required by the Storm Water Permit.

15     278.   Waterkeeper is informed and believes, and thereon alleges, that the Forged
16 Metals Facility Owner and/or Operator failed to describe instances of the Facility's
17 noncompliance with the Storm Water Permit in the 2012-2013 Annual Report.

18     279.   Waterkeeper is informed and believes, and thereon alleges, that the Forged
19 Metals Facility Owner and/or Operator failed to include descriptions of steps taken to
20 prevent recurrence of its noncompliance with the Storm Water Permit in its 2012-2013
21 Annual Report.

22     280.   Waterkeeper is informed and believes, and thereon alleges, that the Forged
23 Metals Facility Owner and/or Operator certified that the Facility was in compliance with
24 the Storm Water Permit in its 2013-2014 Annual Report.

25     281.   Waterkeeper is informed and believes, and thereon alleges, that the Forged
26 Metals Facility Owner's and/or Operator's certification of compliance in the 2013-2014
27 Annual Report was false because the Forged Metals Facility Owner and/or Operator had
28 not revised the Facility SWPPP as required by the Storm Water Permit.

Complaint                                        39

282.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner's and/or Operator's certification of compliance in the 2013-2014 Annual Report was false because the Forged Metals Facility Owner and/or Operator had not revised the Facility M&RP as required by the Storm Water Permit.

283.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to describe instances of the Facility's noncompliance with the Storm Water Permit in its 2013-2014 Annual Report.

284.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator failed to include descriptions of steps taken to prevent recurrence of its noncompliance with the Storm Water Permit in its 2013-2014 Annual Report.

## V.      CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

**Defendant's Discharges of Contaminated Storm Water in Violation of the Storm Water Permit's Effluent Limitation B(3) and the Clean Water Act.**

**33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

285.   Waterkeeper incorporates the allegations contained in the above paragraphs as though fully set forth herein.

286.   Waterkeeper is informed and believes, and thereon alleges, that Defendant failed and continues to fail to reduce or prevent pollutants associated with industrial activities at the Facility from discharging from the Facility through implementation of BMPs that achieve BAT/BCT.

287.   Waterkeeper is informed and believes, and thereon alleges, that discharges of storm water containing levels of pollutants that do not achieve compliance with BAT/BCT standards from the Forged Metals Facility occur every time storm water discharges from the Forged Metals Facility.

288.   The Forged Metals Facility Owner and/or Operator violates and will continue to violate Effluent Limitation B(3) of the Storm Water Permit each and every

1  time storm water containing levels of pollutants that do not achieve BAT/BCT standards

2  discharges from the Forged Metals Facility.

3      289.  Waterkeeper is informed and believes, and thereon alleges, that the Forged

4  Metals Facility Owner's and/or Operator's violations of Effluent Limitation B(3) of the

5  Storm Water Permit and the Clean Water Act are ongoing and continuous.

6      290.  Each and every time the Forged Metals Facility Owner and/or Operator

7  discharges contaminated storm water from the Forged Metals Facility in violation of

8  Effluent Limitation B(3) of the Storm Water Permit is a separate and distinct violation of

9  section 301(a) of the CWA, 33 U.S.C. § 1311(a).

10      291.  By committing the acts and omissions alleged above, the Forged Metals

11  Facility Owner and/or Operator is subject to an assessment of civil penalties for each and

12  every violation of the CWA occurring from May 25, 2009 to the present, pursuant to

13  sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

14      292.  An action for injunctive relief under the CWA is authorized by 33 U.S.C.

15  § 1365(a). Continuing commission of the acts and omissions alleged above would

16  irreparably harm Plaintiffs and the citizens of the State of California, for which harm

17  Waterkeeper has no plain, speedy, or adequate remedy at law.

18      WHEREFORE, Plaintiffs pray for judgment against Defendant as set forth

19  hereafter.

20  ### SECOND CAUSE OF ACTION

21  **Defendant's Discharges of Contaminated Storm Water in Violation of**
22  **Storm Water Permit Receiving Water Limitation C(1) and the Clean Water Act.**
23  **33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

24      293.  Waterkeeper incorporates the allegations contained in the above paragraphs

25  as though fully set forth herein.

26      294.  Waterkeeper is informed and believes, and thereon alleges, that discharges

27  of storm water containing levels of pollutants that adversely impact human health and/or

28  the environment from the Facility occur each time storm water discharges from the

Complaint          41

1   Facility.

2   295.   Waterkeeper is informed and believes, and thereon alleges, that storm water

3   containing levels of pollutants that cause or contribute to exceedances of water quality

4   standards has discharged and continues to discharge from the Facility each time storm

5   water discharges from the Facility, and that these discharges adversely impact human

6   health and/or the environment.

7   296.   The Forged Metals Facility Owner and/or Operator violates and will

8   continue to violate Receiving Water Limitation C(1) of the Storm Water Permit each and

9   every time storm water containing levels of pollutants that adversely impact human

10   health and/or the environment discharges from the Facility.

11   297.   Waterkeeper is informed and believes, and thereon alleges, that the Forged

12   Metals Facility Owner's and/or Operator's violations of Receiving Water Limitation C(1)

13   of the Storm Water Permit and the CWA are ongoing and continuous.

14   298.   Each and every violation of Receiving Water Limitation C(1) of the Storm

15   Water Permit is a separate and distinct violation of section 301(a) of the CWA, 33 U.S.C.

16   § 1311(a).

17   299.   By committing the acts and omissions alleged above, the Forged Metals

18   Facility Owner and/or Operator is subject to an assessment of civil penalties for each and

19   every violation of the CWA occurring from May 25, 2009 to the present, pursuant to

20   sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

21   300.   An action for injunctive relief under the Clean Water Act is authorized by 33

22   U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would

23   irreparably harm Plaintiffs and the citizens of the State of California, for which harm

24   Waterkeeper has no plain, speedy, or adequate remedy at law.

25   WHEREFORE, Plaintiffs pray for judgment against Defendant as set forth

26   hereafter.

27   ///

28   ///

Complaint                               42

# THIRD CAUSE OF ACTION

**Defendant's Discharges of Contaminated Storm Water in Violation of Storm Water Permit Receiving Water Limitation C(2) and the Clean Water Act.**

**33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

301.   Waterkeeper incorporates the allegations contained in the above paragraph as though fully set forth herein.

302.   Waterkeeper is informed and believes, and thereon alleges, that discharges of storm water containing levels of pollutants that cause or contribute to exceedances of water quality standards from the Facility occur each time storm water discharges from the Facility.

303.   The Forged Metals Facility Owner and/or Operator violates and will continue to violate Receiving Water Limitation C(2) of the Storm Water Permit each and every time storm water containing levels of pollutants that cause or contribute to exceedances of water quality standards discharges from the Facility.

304.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner's and/or Operator's violations of Receiving Water Limitation C(2) of the Storm Water Permit and the CWA are ongoing and continuous.

305.   Each and every violation of Receiving Water Limitation C(2) of the Storm Water Permit is a separate and distinct violation of section 301(a) of the CWA, 33 U.S.C. § 1311(a).

306.   By committing the acts and omissions alleged above, the Forged Metals Facility Owner and/or Operator is subject to an assessment of civil penalties for each and every violation of the CWA occurring from May 25, 2009 to the present, pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

307.   An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiffs and the citizens of the State of California, for which harm Waterkeeper has no plain, speedy, or adequate remedy at law.

WHEREFORE, Plaintiffs pray for judgment against Defendant as set forth hereafter.

### FOURTH CAUSE OF ACTION

**Defendant's Failure to Adequately Develop, Implement, and/or Revise a Storm Water Pollution Prevention Plan in Violation of Section A and Provision E(2) of the Storm Water Permit and the Clean Water Act.**

**33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

308. Waterkeeper incorporates the allegations contained in the above paragraphs as though fully set forth herein.

309. Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator has failed and continues to fail to develop an adequate SWPPP for the Forged Metals Facility, in violation of Section A and Provision E(2) of the Storm Water Permit.

310. Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator has failed and continues to fail to adequately implement a SWPPP for the Forged Metals Facility, in violation of Section A and Provision E(2) of the Storm Water Permit.

311. Waterkeeper is informed and believes, and thereon alleges, that Forged Metals Facility Owner and/or Operator has failed and continues to fail to adequately revise a SWPPP for the Forged Metals Facility, in violation of Sections A(9) and A(10) of the Storm Water Permit.

312. The Forged Metals Facility Owner and/or Operator has been in violation of Section A and Provision E(2) of the Storm Water Permit at the Forged Metals Facility every day from May 25, 2009 to the present.

313. The Forged Metals Facility Owner's and/or Operator's violations of Section A and Provision E(2) of the Storm Water Permit and the CWA at the Forged Metals Facility are ongoing and continuous.

314. The Forged Metals Facility Owner and/or Operator will continue to be in

violation of Section A and Provision E(2) of the Storm Water Permit and the CWA each and every day the Forged Metals Facility Owner and/or Operator fails to adequately develop, implement, and/or revise the SWPPP for the Forged Metals Facility.

315.   Each and every violation of the Storm Water Permit's SWPPP requirements at the Forged Metals Facility is a separate and distinct violation of the CWA.

316.   By committing the acts and omissions alleged above, the Forged Metals Facility Owner and/or Operator is subject to an assessment of civil penalties for each and every violation of the CWA occurring from May 25, 2009 to the present, pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

317.   An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Waterkeeper and the citizens of the State of California, for which harm Waterkeeper has no plain, speedy, or adequate remedy at law.

WHEREFORE, Plaintiffs pray for judgment against the Defendant as set forth hereafter.

## FIFTH CAUSE OF ACTION

**Defendant's Failure to Adequately Develop, Implement, and/or Revise a Monitoring and Reporting Program in Violation of the Storm Water Permit and the Clean Water Act.**

**33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

318.   Waterkeeper incorporates the allegations contained in the above paragraphs as though fully set forth herein.

319.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator has failed and continues to fail to develop an adequate M&RP for the Forged Metals Facility, in violation of Section B and Provision E(3) of the Storm Water Permit.

320.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator has failed and continues to fail to adequately

1    implement an M&RP for the Forged Metals Facility, in violation of Section B and

2    Provision E(3) of the Storm Water Permit.

3        321.   Waterkeeper is informed and believes, and thereon alleges, that the Forged

4    Metals Facility Owner and/or Operator has failed and continues to fail to adequately

5    revise an M&RP for the Forged Metals Facility, in violation of Section B and Provision

6    E(3) of the Storm Water Permit.

7        322.   The Forged Metals Facility Owner and/or Operator has been in violation of

8    the Section B and Provision E(3) of the Storm Water Permit at the Forged Metals Facility

9    every day from May 25, 2009 to the present.

10       323.   The Forged Metals Facility Owner's and/or Operator's violations of Section

11   B and Provision E(3) of the Storm Water Permit and the CWA at the Forged Metals

12   Facility are ongoing and continuous.

13       324.   The Forged Metals Facility Owner and/or Operator will continue to be in

14   violation of Section B and Provision E(3) the Storm Water Permit and the CWA each and

15   every day it fails to adequately develop, implement, and/or revise an M&RP for the

16   Forged Metals Facility.

17       325.   Each and every violation of the Storm Water Permit's M&RP requirements

18   at the Forged Metals Facility is a separate and distinct violation of the CWA.

19       326.   By committing the acts and omissions alleged above, the Forged Metals

20   Facility Owner and/or Operator is subject to an assessment of civil penalties for each and

21   every violation of the CWA occurring from May 25, 2009 to the present, pursuant to

22   sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

23       327.   An action for injunctive relief under the CWA is authorized by 33 U.S.C.

24   § 1365(a). Continuing commission of the acts and omissions alleged above would

25   irreparably harm Waterkeeper and the citizens of the State of California, for which harm

26   Waterkeeper has no plain, speedy, or adequate remedy at law.

27       WHEREFORE, Plaintiffs pray for judgment against the Defendant as set forth

28   hereafter.

### SIXTH CAUSE OF ACTION

**Defendant's Failure to Report as Required by the Storm Water Permit in Violation of the Storm Water Permit and the Clean Water Act.**

**33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

328.   Waterkeeper incorporates the allegations contained in the above paragraphs as though fully set forth herein.

329.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator has failed and continues to fail to submit accurate Annual Reports to the Regional Board, in violation of Sections B(14), C(9), and C(10) of the Storm Water Permit.

330.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner's and/or Operator's Annual Reports failed and continue to fail to meet the monitoring and reporting requirements of the Storm Water Permit, in violation of Section B(14) of the Storm Water Permit.

331.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator has failed and continues to fail to submit complete Annual Reports to the Regional Board, in violation of Sections B(14), C(9), C(10) and C(11) of the Storm Water Permit.

332.   Waterkeeper is informed and believes, and thereon alleges, that the Forged Metals Facility Owner and/or Operator has failed and continues to fail to report its non-compliance with the Storm Water Permit in its Annual Reports to the Regional Board, in violation of Sections B(14), C(9), C(10) and C(11) of the Storm Water Permit.

333.   The Forged Metals Facility Owner and/or Operator has been in violation of Sections B(14), C(9), C(10), and/or C(11) of the Storm Water Permit and CWA every day since at least May 25, 2009.

334.   The Forged Metals Facility Owner's and/or Operator's violations of the reporting requirements of the Storm Water Permit and the CWA are ongoing and continuous.

335.   By committing the acts and omissions alleged above, the Forged Metals Facility Owner and/or Operator is subject to an assessment of civil penalties for each and every violation of the CWA occurring from May 25, 2009 to the present, pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

336.   An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Waterkeeper and the citizens of the State of California, for which harm Waterkeeper has no plain, speedy, or adequate remedy at law.

WHEREFORE, Plaintiffs pray for judgment against the Defendant as set forth hereafter.

## VI.    RELIEF REQUESTED

337.   Plaintiffs respectfully request that this Court grant the following relief:

a.    A Court order declaring Defendant to have violated and to be in violation of the Storm Water Permit and Sections 301(a) and 402(p) of the CWA, 33 U.S.C. § 1311(a), for its discharges of pollutants not in compliance with the Storm Water Permit and its violations of the substantive and procedural requirements of the Storm Water Permit;

b.    A Court order enjoining Defendant from violating the substantive and procedural requirements of the Storm Water Permit;

c.    A Court order requiring Defendant to develop and implement affirmative injunctive measures to eliminate Defendant's violations of the substantive and procedural requirements of the Storm Water Permit and the Clean Water Act;

d.    A Court order assessing civil monetary penalties for each violation of the CWA at $37,500 per day per violation for violations occurring since May 25, 2009, as permitted by 33 U.S.C. § 1319(d) and 40 C.F.R. § 19.4;

e.    A Court order awarding Plaintiffs their reasonable costs of suit, including attorney, witness, expert, and consultant fees, as permitted by section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d); and

f.      Any other relief as this Court may deem appropriate.

Dated: July 24, 2014                    Respectfully submitted,

LAWYERS FOR CLEAN WATER, INC.

_____
Daniel Cooper
Attorney for Plaintiffs
Inland Empire Waterkeeper and Orange
County Coastkeeper

**Exhibit 1**



Inland Empire Waterkeeper
Advocacy • Education • Restoration • Enforcement

6876 Indiana Avenue, Suite D
Riverside, CA 92506
Phone (951) 530-8823
Fax (951) 530-8824
Website www.iewaterkeeper.org

May 1, 2014

**VIA CERTIFIED MAIL**

Forged Metals, Inc.
Attention: Managing Agent
10685 Beech Avenue
Fontana, California 92337

**VIA U.S MAIL**

National Corporate Research, LTD
Registered Agent for
Forged Metals, Inc.
523 W. 6th Street, Suite 544
Los Angeles, California 90014

**Re:    Notice of Violation and Intent to File Suit Under the Clean Water Act**

To Whom It May Concern:

I am writing on behalf of Inland Empire Waterkeeper and Orange County Coastkeeper (collectively "Waterkeeper") in regard to violations of the Clean Water Act[1] and California's Storm Water Permit[2] occurring at 10685 Beech Avenue, Fontana, California 92337 ("Forged Metals Facility" or "Facility"). This letter is being sent to you as the responsible owner and/or operator of the Forged Metals Facility, or as the registered agent for this entity. This letter puts Forged Metals, Inc. (hereinafter referred to as the "Forged Metals Facility Owner and/or Operator") on notice of the violations of the Storm Water Permit occurring at the Forged Metals Facility including, but not limited to, discharges of polluted storm water from the Forged Metals Facility into local surface waters. Violations of the Storm Water Permit are violations of the Clean Water Act. As explained below, the Forged Metals Facility Owner and/or Operator is liable for violations of the Storm Water Permit and the Clean Water Act.

Section 505(b) of the Clean Water Act, 33 U.S.C. § 1365(b), requires that a citizen give notice of his/her intention to file suit sixty (60) days prior to the initiation of a civil action under Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a). Notice must be given to the alleged

---

[1] Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*
[2] National Pollution Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ.

violator, the Administrator of the United States Environmental Protection Agency ("EPA"), the Regional Administrator of the EPA, the Executive Officer of the water pollution control agency in the state in which the violations occur, and, if the alleged violator is a corporation, the registered agent of the corporation. *See* 40 C.F.R. § 135.2(a)(1).

By this letter issued pursuant to 33 U.S.C. §§ 1365(a) and (b) of the Clean Water Act, (hereinafter "Notice Letter"), Waterkeeper puts the Forged Metals Facility Owner and/or Operator on notice that after the expiration of sixty (60) days from the date of this Notice Letter, Waterkeeper intends to file an enforcement action in Federal court against it for violations of the Storm Water Permit and the Clean Water Act.

## I.      BACKGROUND

### A.   Inland Empire Waterkeeper and Orange County Coastkeeper

Inland Empire Waterkeeper's office is located at 6876 Indiana Avenue, Suite D, Riverside, California 92506. Inland Empire Waterkeeper is a chapter of Orange County Coastkeeper. Orange County Coastkeeper is a non-profit public benefit corporation organized under the laws of the State of California with its office at 3151 Airway Avenue, Suite F-110, Costa Mesa, California 92626. Together, Inland Empire Waterkeeper and Orange County Coastkeeper have over 2,000 members who live and/or recreate in and around San Bernardino County and the Santa Ana River watershed. Inland Empire Waterkeeper and Orange County Coastkeeper are dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of their local watersheds, including the Santa Ana River and its tributaries. To further these goals, Waterkeeper actively seeks federal and state agency implementation of the Clean Water Act and, where necessary, directly initiates enforcement actions on behalf of itself and its members.

Members of Waterkeeper use and enjoy the waters into which the Forged Metals Facility discharges, including the Santa Ana River and its tributaries. Members of Waterkeeper use and enjoy the Santa Ana River and its tributaries to picnic, hike, view wildlife, and engage in scientific study, including monitoring activities, among other things. Procedural and substantive violations of the Storm Water Permit including, but not limited to, the discharge of pollutants from the Forged Metals Facility impairs each of these uses. Further, these violations are ongoing and continuous. Thus, the interests of Waterkeeper's members have been, are being, and will continue to be adversely affected by the Forged Metals Facility Owner's and/or Operator's failure to comply with the Storm Water Permit and the Clean Water Act.

### B.   The Owner and/or Operator of the Forged Metals Facility

Information available to Waterkeeper indicates that Forged Metals, Inc. is an owner and/or operator of the Forged Metals Facility. Forged Metals, Inc. is an active corporation registered in California. The registered agent for Forged Metals, Inc. is National Corporate Research, LTD, located at 523 W. 6th Street, Suite 544, Los Angeles, California 90014.

Notice of Violation and Intent to File Suit
May 1, 2014
Page 3 of 16

The Forged Metals Facility Owner and/or Operator has violated and continues to violate the procedural and substantive terms of the Storm Water Permit including, but not limited to, the illegal discharge of pollutants from the Forged Metals Facility into local surface waters. As explained herein, the Forged Metals Facility Owner and/or Operator is liable for violations of the Storm Water Permit and the Clean Water Act.

## C.  The Forged Metals Facility's Storm Water Permit Coverage

Prior to beginning industrial operations, dischargers are required to apply for coverage under the Storm Water Permit by submitting a Notice of Intent to Comply with the Terms of the General Permit to Discharge Storm Water Associated with Industrial Activity ("NOI") to the State Water Resources Control Board ("State Board"). *See* Storm Water Permit, Finding #3. The Forged Metals Facility Owner and/or Operator submitted an NOI for the Forged Metals Facility on May 26, 1992 ("1992 NOI"). The NOI indicated that the Facility is approximately six (6) acres in size. The Forged Metals Facility Owner and/or Operator submitted a Notice of Intent for Existing Facility Operators, as required by the State Board, on February 24, 1998 ("1998 NOI"). A third NOI, dated June 23, 2010 ("2010 NOI"), is also on file with the State Board for the Forged Metals Facility and lists the size of the Facility as eight (8) acres. The 1992 NOI, 1998 NOI, and 2010 NOI list the Waste Discharge Identification ("WDID") number for the Forged Metals Facility as 8-36I007116.

The 1992 NOI, 1998 NOI, and 2010 NOI list the Standard Industrial Classification ("SIC") code for the Forged Metals Facility as 3462 (Iron and Steel Forgings). Facilities classified as SIC code 3462 are covered by the Storm Water Permit in areas where industrial materials, equipment, or activities are exposed to storm water. *See* Storm Water Permit, Attachment 1. Information available to Waterkeeper indicates that industrial activities are exposed to storm water at the Forged Metals Facility, such as unloading of raw materials and loading of finishing products. Additionally, unprocessed materials, equipment, and scrap materials are stored outdoors in areas exposed to storm water. The Storm Water Permit regulates the areas where these activities and equipment are exposed to storm water at the Forged Metals Facility.

Information available to Waterkeeper indicates that SIC code 3398 (Metal Heat Treating) also applies to the Forged Metals Facility. The Facility's Storm Water Pollution Prevention Plan ("SWPPP") and site map specifically identify and describe a "heat treatment area" located in the northeastern portion of the Facility where metals are annealed and/or hardened, and thus this SIC code applies to the Facility. When a manufacturing facility is classified under SIC code 3398, the entire facility is regulated by the Storm Water Permit. *See* Storm Water Permit, Attachment 1. Therefore, the entire Forged Metals Facility is subject to the Storm Water Permit's requirements. In addition, the Forged Metals Facility October 2007 SWPPP states, "The Permit covers the

Notice of Violation and Intent to File Suit
May 1, 2014
Page 4 of 16

entire Facility." 2007 SWPPP, page 4.[3]

### D. **Storm Water Pollution and the Waters Receiving the Forged Metals Facility's Discharges**

With every significant rainfall event, millions of gallons of polluted storm water originating from industrial operations such as the Forged Metals Facility pour into storm drains and local waterways. The consensus among agencies and water quality specialists is that storm water pollution accounts for more than half of the total pollution entering surface waters each year. Such discharges of pollutants from industrial facilities contribute to the impairment of downstream waters and adversely impact aquatic-dependent wildlife. These contaminated discharges can and must be controlled for downstream ecosystems to regain their health.

Storm water discharges from metal forging facilities, like the Forged Metals Facility, contain pollutants such as oil and grease ("O&G"), total suspended solids ("TSS"), specific conductance ("SC"), and heavy metals (such as copper, iron, lead, aluminum, and zinc). Many of these pollutants are on the list of chemicals published by the State of California as known to cause cancer, birth defects, and/or developmental or reproductive harm. Discharges of polluted storm water to the Santa Ana River and its tributaries pose carcinogenic and reproductive toxicity threats to the public and adversely affect the aquatic environment.

The Santa Ana River and its tributaries are receiving waters for discharges from the Forged Metals Facility. The Santa Ana River is an ecologically sensitive area. Although pollution and habitat destruction have drastically diminished once-abundant and varied fisheries, the Santa Ana River and its tributaries still provide essential habitat for dozens of fish, bird, and invertebrate species. These pollutants harm the special aesthetic and recreational significance that the Santa Ana River has for people in the surrounding communities, including Waterkeeper's members. The public's use of the Santa Ana River and its tributaries for water contact sports exposes people to toxic metals and other contaminants in storm water and non-storm water discharges. Non-contact recreational and aesthetic opportunities, such as wildlife observation, are also impaired by polluted discharges to the Santa Ana River and its tributaries.

The California Regional Water Quality Control Board, Santa Ana Region Regional Board ("Regional Board") issued the *Santa Ana River Basin Water Quality Control Plan* ("Basin Plan"). The Basin Plan identifies the "Beneficial Uses" of water bodies in the region. The Beneficial Uses for the Santa Ana River near or downstream of the point at which it receives polluted storm water discharges from the Forged Metals Facility (i.e., Santa Ana River Reaches 1 – 4) include: Agricultural Supply; Groundwater Recharge; Water Contact Recreation; Non-contact Water Recreation; Warm Freshwater Habitat; Wildlife Habitat; and Rare, Threatened, or Endangered Species. *See* Basin Plan at Table 3-1. According to the 2010 303(d) List of Impaired

---

[3] This is the SWPPP that the Forged Metals Facility Owner and/or Operator submitted following the California Regional Water Quality Control Board's February 11, 2014 request for the Facility's most recent SWPPP.

Notice of Violation and Intent to File Suit
May 1, 2014
Page 5 of 16

Water Bodies, Reach 4 of the Santa Ana River is impaired for pathogens, Reach 3 is impaired for copper, lead, and pathogens, and Reach 2 is impaired for indicator bacteria.[4] Polluted discharges from industrial sites such as the Forged Metals Facility contribute to the degradation of these already impaired surface waters and of the ecosystems that depend on these waters.

## II.     THE FORGED METALS FACILITY AND ASSOCIATED DISCHARGES OF POLLUTANTS

### A.   The Forged Metals Facility Site Description

Information available to Waterkeeper indicates that the Forged Metals Facility is approximately eight (8) acres and 20% impervious. The Facility property is bordered by Beech Avenue to the west, between Slover Avenue and Manila Street. The points of egress/ingress to the Facility include three (3) driveways leading to Beech Avenue, including one in the southwest corner of the property, one in the middle of the property at the west end of the central parking lot, and one in the northwest corner of the property at the end of the north parking lot.

Information available to Waterkeeper indicates that the Facility includes a shipping and receiving area in the northeast corner of the Facility at the end of the north parking lot that is used to unload raw materials and load finished products before shipping. Just east of the shipping and receiving area is the heat treatment area, which includes several furnaces and large baths, plus an open-air cooling water system. The Facility also includes a machine shop building that is located towards the center of the Facility and south of the center parking lot. Metal products are manufactured, honed, and customized in this building. Metal scraps and pieces are also stored in this building before they are disposed or recycled. Just south of the machine shop building is the grinding area, which includes several enclosed areas for maintaining tools and parts. On the south end of the Facility is the forging area, which is an enclosed area where equipment is stored and most of the metal processing occurs, including the use of furnaces, hammers, open and closed die casting, and extrusion equipment. Cooling water is also brought into this area for the cooling of forging equipment. Steam cleaning occurs along the north wall of the forging area. Finally, the wastewater treatment area is located just west of the steam cleaning area and processes all of the cooling water in the Facility, particularly from the heat treatment area and forging area.

### B.   The Forged Metals Facility Industrial Activities and Associated Pollutants

According to information available to Waterkeeper, the Forged Metals Facility manufactures rings for the aerospace industry and produces customized forgings for numerous other products, such as prosthetic surgery, land-based gas turbines, and diesel engines. The Forged Metals Facility's industrial activities and areas are pollutant sources and include, but are

---

[4] 2010 Integrated Report – All Assessed Waters, available at: http://www.waterboards.ca.gov/water_issues/programs/tmdl/integrated2010.shtml (last accessed on April 8, 2014).

not limited to: metal product manufacturing and processing; metal forging area; shipping, receiving, and moving products around the Facility; equipment and vehicle maintenance, cleaning, and storage; unloading raw materials; loading finished products; heat treatment area; the cooling water systems; scrap storage; steam cleaning; metal grinding area; waste water treatment area; unprocessed material storage and scrap storage areas; the machine shop; and the three (3) on-site parking lots.

The pollutants associated with the Facility include, but are not limited to: O&G; heavy metals, including, but not limited to, aluminum, iron, lead, copper, and zinc; TSS; nitrate + nitrite nitrogen; trash and debris; gas, diesel, fuel, and fuel additives; fugitive and other dust and dirt; and pH-affecting substances.

Information available to Waterkeeper indicates that storage of vehicles and equipment, storage of materials associated with metal forging, and other industrial activities occur outdoors at the Facility without adequate cover to prevent storm water and non-storm water exposure to pollutant sources, and without secondary containment or other adequate treatment measures to prevent polluted storm water and non-storm water from discharging from the Forged Metals Facility. Further, information available to Waterkeeper indicates that the pollutants associated with the Facility have been and continue to be tracked throughout the Forged Metals Facility, where they accumulate at the storm water discharge points and the driveways leading to Beech Avenue. This results in trucks and vehicles tracking sediment, dirt, oil, grease, metal particles, and other pollutants off-site. The resulting illegal discharges of polluted water impacts Waterkeeper's members' use and enjoyment of the Santa Ana River and its tributaries by degrading the quality of the Santa Ana River and by posing risks to human health and aquatic life.

## C.  Forged Metals Facility Storm Water Flows and Discharge Locations

The Forged Metals Facility Owner and/or Operator reports that there are two (2) discharge points located on-site and that one of them, called the Main Storm Drain, is the only point of off-site storm water discharge. The Main Storm Drain is located in the southwest corner of the Facility near the south parking lot. The Facility's SWPPP states that storm water from the entire Facility is routed by underground piping, gutters, and/or gravity to the Main Storm Drain. However, information available to Waterkeeper indicates that at least four (4) other storm water discharge points exist at the Facility, including the north curb and south curb of the driveway that leads from the center parking lot onto Beech Avenue and the north curb and south curb of the driveway that leads from the north parking lot onto Beech Avenue. All discharge points lead to the municipal separate storm sewer system, which flows to the Santa Ana River.

## III.   VIOLATIONS OF THE CLEAN WATER ACT AND THE STORM WATER PERMIT

In California, any person who discharges storm water associated with industrial activity must comply with the terms of the Storm Water Permit in order to lawfully discharge pollutants.

Notice of Violation and Intent to File Suit
May 1, 2014
Page 7 of 16


*See* 33 U.S.C. §§ 1311(a), 1342; 40 C.F.R. § 122.26(c)(1); *see also* Storm Water Permit, Fact Sheet at VII.

**A.  Discharges of Polluted Storm Water from the Forged Metals Facility in Violation of Effluent Limitation B(3) of the Storm Water Permit**

Effluent Limitation B(3) of the Storm Water Permit requires dischargers to reduce or prevent pollutants associated with industrial activity in storm water discharges through implementation of best management practices ("BMPs") that achieve best available technology economically achievable ("BAT") for toxic pollutants[5] and best conventional pollutant control technology ("BCT") for conventional pollutants.[6] Benchmark Levels are relevant and objective standards to evaluate whether a permittee's BMPs achieve compliance with BAT/BCT standards as required by Effluent Limitation B(3) of the Storm Water Permit.[7]

Storm water sampling at the Forged Metals Facility demonstrates that the Facility's storm water discharges contain concentrations of pollutants above the Benchmark Levels. *See* Exhibit A (table listing the Facility's storm water samples exceeding Benchmark Level(s), as reported to the Regional Board by the Forged Metals Facility Owner and/or Operator and in samples collected by Waterkeeper). The repeated and significant exceedances of Benchmark Levels demonstrate that the Forged Metals Facility Owner and/or Operator has failed and continues to fail to develop and/or implement BMPs to prevent the exposure of pollutants to storm water and to prevent discharges of polluted storm water from the Forged Metals Facility, in violation of Effluent Limitation B(3) of the Storm Water Permit.

Information available to Waterkeeper indicates that the Forged Metals Facility Owner and/or Operator violates Effluent Limitation B(3) of the Storm Water Permit for failing to develop and/or implement BMPs that achieve BAT/BCT each time storm water is discharged from the Forged Metals Facility. *See e.g.*, Exhibit C (setting forth dates of rain events resulting in a discharge at the Facility).[8] These discharge violations are ongoing and will continue each day the Forged Metals Facility Owner and/or Operator discharges polluted storm water without developing and/or implementing BMPs that achieve compliance with the BAT/BCT standards. Waterkeeper will update the number and dates of violation when additional information and data becomes available. Each time the Forged Metals Facility Owner and/or Operator discharges

---

[5] Toxic pollutants are listed at 40 C.F.R. § 401.15 and include copper, lead, and zinc, among others.

[6] Conventional pollutants are listed at 40 C.F.R. § 401.16 and include biological oxygen demand, total suspended solids, oil and grease, pH, and fecal coliform.

[7] *See* EPA Storm Water Multi-Sector Permit (2008), Fact Sheet, p. 106; *see also*, EPA Storm Water Multi-Sector Permit, 65 Federal Register 64839 (2000).

[8] Exhibit C sets forth dates of significant rain events as measured at the San Bernardino County Yard rain gauge from May 1, 2009 to May 1, 2014. A significant rain event is defined by EPA as a rainfall event generating 0.1 inches or more of rainfall, which generally results in measurable discharges at a typical industrial facility.

Notice of Violation and Intent to File Suit
May 1, 2014
Page 8 of 16

polluted storm water in violation of Effluent Limitation B(3) of the Storm Water Permit is a separate and distinct violation of the Storm Water Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. §1311(a). The Forged Metals Facility Owner and/or Operator is subject to civil penalties for all violations of the Clean Water Act occurring since May 1, 2009.

**B.  Discharges of Polluted Storm Water from the Forged Metals Facility in Violation of Receiving Water Limitations C(1) and C(2) of the Storm Water Permit**

Receiving Water Limitation C(1) of the Storm Water Permit prohibits storm water discharges and authorized non-storm water discharges to surface water or ground water that adversely impact human health or the environment. Discharges that contain pollutants in concentrations that exceed levels known to adversely impact aquatic species and the environment constitute violations of Receiving Water Limitation C(1) of the Storm Water Permit and the Clean Water Act. Receiving Water Limitation C(2) of the Storm Water Permit prohibits storm water discharges and authorized non-storm water discharges that cause or contribute to an exceedance of an applicable water quality standard ("WQS").[9] Discharges that contain pollutants in excess of an applicable WQS violate Receiving Water Limitation C(2) of the Storm Water Permit and the Clean Water Act.

As explained above in Section I.D, the 2010 303(d) List of Impaired Water Bodies lists the Santa Ana River as impaired for multiple pollutants. Information available to Waterkeeper indicates that the Forged Metals Facility's storm water discharges contain elevated concentrations of pollutants, which can be acutely toxic and/or have sub-lethal impacts on the avian and aquatic wildlife in the Santa Ana River. *See* Exhibit B (table listing the Facility's storm water samples containing pollutants). Discharges of elevated concentrations of pollutants in the storm water from the Forged Metals Facility also adversely impact human health. These harmful discharges from the Forged Metals Facility are violations of Receiving Water Limitation C(1).

The Forged Metals Facility storm water discharges also contain concentrations of pollutants that cause or contribute to violations of applicable WQSs. *See* Exhibit A (table listing the Facility's storm water samples exceeding applicable WQSs, as reported to the Regional Board by the Forged Metals Facility Owner and/or Operator and in samples collected by Waterkeeper). Storm water discharges from the Forged Metals Facility that cause or contribute to exceedances of WQSs are violations of Receiving Water Limitation C(2).

---

[9] As explained above in Section I.D, the Basin Plan designates Beneficial Uses for the Receiving Waters. Water quality standards are pollutant concentration levels determined by the state or federal agencies to be protective of designated Beneficial Uses. Discharges above water quality standards contribute to the impairment of the Receiving Waters' Beneficial Uses. Applicable water quality standards include, among others, the Criteria for Priority Toxic Pollutants in the State of California, 40 C.F.R. § 131.38 ("CTR"), and the water quality objectives in the Basin Plan.

Notice of Violation and Intent to File Suit
May 1, 2014
Page 9 of 16

Information available to Waterkeeper indicates that the storm water discharges from the Forged Metals Facility violate Receiving Water Limitations C(1) and/or C(2) each time storm water is discharged from the Facility. These violations are ongoing, and will continue each time contaminated storm water is discharged in violation of Receiving Water Limitation C(1) and/or C(2) of the Storm Water Permit. Each time discharges of storm water from the Facility adversely impact human health or the environment is a separate and distinct violation of Receiving Water Limitation C(1) of the Storm Water Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. §1311(a). Each time discharges of storm water from the Forged Metals Facility cause or contribute to an exceedance of an applicable WQS is a separate and distinct violation of Receiving Water Limitation C(2) of the Storm Water Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. §1311(a). Waterkeeper will update the number and dates of violations when additional information becomes available. The Forged Metals Facility Owner and/or Operator is subject to civil penalties for all violations of the Clean Water Act occurring since May 1, 2009.

C. **Non-Storm Water Discharges from the Forged Metals Facility in Violation of Discharge Prohibition A(1) of the Storm Water Permit**

Except as authorized by Special Conditions D(1) of the Storm Water Permit, Discharge Prohibition A(1) prohibits permittees from discharging materials other than storm water (non-storm water discharges) either directly or indirectly to waters of the United States. Prohibited non-storm water discharges must be either eliminated or permitted by a separate NPDES permit. *See* Storm Water Permit, Discharge Prohibition A(1).

Information available to Waterkeeper indicates that unauthorized non-storm water discharges occur at the Facility due to inadequate BMP development and/or implementation necessary to prevent these discharges. For example, the Forged Metals Facility's SWPPP states that a cooling water system is used inside of the heat treatment area and this system may leak onto the asphalt outside. The SWPPP does not identify these leaks as non-storm water discharges, nor does it include BMPs to address the leaks or to prevent these non-storm water discharges. Additionally, the SWPPP does not identify what pollutants would be in leaking cooling water, but only refers to the "things" in the cooling water "that might contaminate storm water." Cooling water is also used in the Facility's industrial activities, and is a potential source of non-storm water discharges in the heat treatment and forging areas. Further, the SWPPP states that the Facility's cooling water gets processed in the waste water treatment area and then is "drained." However, this drained water is not identified as a non-storm water discharge and there are no BMPs to prevent non-storm water discharges from the Facility. Non-storm water discharges resulting from cooling water system leaks and waste water treatment draining are not from sources that are listed among the authorized non-storm water discharges in Special Conditions D(1) of the Storm Water Permit and thus are always prohibited under the Storm Water Permit.

Waterkeeper puts the Forged Metals Facility Owner and/or Operator on notice that Discharge Prohibition A(1) of the Storm Water Permit is violated each time non-storm water is

discharged from the Forged Metals Facility. These discharge violations are ongoing and will continue until the Forged Metals Facility Owner and/or Operator develops and implements BMPs that prevent prohibited non-storm water discharges or obtains separate NPDES permit coverage. Each time the Forged Metals Facility Owner and/or Operator discharges prohibited non-storm water in violation of Discharge Prohibition A(1) of the Storm Water Permit is a separate and distinct violation of the Storm Water Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a). The Forged Metals Facility Owner and/or Operator is subject to civil penalties for all violations of the Clean Water Act occurring since May 1, 2009.

### D. Failure to Develop, Implement and/or Revise an Adequate Storm Water Pollution Prevention Plan

Section A(1) and Provision E(2) of the Storm Water Permit require dischargers to have developed and implemented a SWPPP by October 1, 1992, or prior to beginning industrial activities, that meets all of the requirements of the Storm Water Permit. The objectives of the SWPPP requirement are to identify and evaluate sources of pollutants associated with industrial activities that may affect the quality of storm water discharges from the Forged Metals Facility, and to implement site-specific BMPs to reduce or prevent pollutants associated with industrial activities in storm water discharges. *See* Storm Water Permit, Section A(2). These BMPs must achieve compliance with the Storm Water Permit's Effluent Limitations and Receiving Water Limitations. To ensure compliance with the Storm Water Permit, the SWPPP must be evaluated on an annual basis pursuant to the requirements of Section A(9), and must be revised as necessary to ensure compliance with the Storm Water Permit. *Id.*, Sections A(9) and (10).

Sections A(3) – A(10) of the Storm Water Permit set forth the requirements for a SWPPP. Among other requirements, the SWPPP must include: a site map showing the facility boundaries, storm water drainage areas with flow patterns, nearby water bodies, the location of the storm water collection, conveyance and discharge system, structural control measures, areas of actual and potential pollutant contact, areas of industrial activity, and other features of the facility and its industrial activities (*see* Storm Water Permit, Section A(4)); a list of significant materials handled and stored at the site (*see* Storm Water Permit, Section A(5)); a description of potential pollutant sources, including industrial processes, material handling and storage areas, dust and particulate generating activities, significant spills and leaks, non-storm water discharges and their sources, and locations where soil erosion may occur (*see* Storm Water Permit, Section A(6)). Sections A(7) and A(8) of the Storm Water Permit require an assessment of potential pollutant sources at the facility and a description of the BMPs to be implemented at the facility that will reduce or prevent pollutants in storm water discharges and authorized non-storm water discharges, including structural BMPs where non-structural BMPs are not effective.

Information available to Waterkeeper indicates that the Forged Metals Facility Owner and/or Operator has been conducting operations at the Facility with an inadequately developed and/or implemented SWPPP. For example, the SWPPP site map for the Forged Metals Facility does not include all of the information required by Section A(4) of the Storm Water Permit, such as the Facility boundaries, an outline of all storm water drainage areas within the Facility boundaries, portions of the drainage area impacted by run-on from surrounding area, areas of soil

erosion, nearby waterbodies, the location of the storm water collection and conveyance system, discharge locations, structural control measures that affect storm water discharges, an outline of all impervious areas of the Facility, locations where materials are directly exposed to precipitation, or all areas of industrial activity.

Additionally, the Facility SWPPP does not identify the names of the pollution prevention team members or the significant materials handled and stored at the Facility to the extent required by the Storm Water Permit. Further, the Storm Water Permit requires the SWPPP to describe the types of pollutants that could be discharged in a facility's storm water discharges. However, the SWPPP only uses general words such as "things," "chemicals," "metals," and "various lubricants" to describe pollutants associated with industrial activities at the Facility, rather than identifying what pollutants are associated with, for example, cooling water system leaks, as required by the Storm Water Permit. Such specificity is required to develop adequate BMPs to reduce the different pollutants from the Facility's discharges. Although the SWPPP makes multiple references to worksheets that may include additional information required by the Storm Water Permit, these worksheets were not included in the current SWPPP that the Forged Metals Facility Owner and/or Operator provided to the Regional Board. Further, even when more specific pollutants are identified, the SWPPP still does not include all of the information required by the Storm Water Permit about these pollutants, such as the characteristics or quantity of the significant materials.

Additional examples of the Forged Metals Facility Owner's and/or Operator's failure to develop and/or implement a SWPPP that complies with the Storm Water Permit include the lack of any description of dust and particulate pollutants generated by the Facility's industrial activities, the Facility's non-storm water discharges, or areas of soil erosion. The SWPPP also does not include a summary of all areas of industrial activities and the potential pollutants in a table resembling Table B in the Storm Water Permit, as required by Section A(6)(b) of the Storm Water Permit. Further, the descriptions of the BMPs in the SWPPP do not comply with the Storm Water Permit requirements.

The Forged Metals Facility Owner and/or Operator has also failed to revise the Facility's SWPPP to ensure compliance with the Storm Water Permit. Despite the significant concentrations of pollutants in the Facility's storm water discharges every year since at least the 2008-2009 Wet Season,[10] the Facility's current SWPPP is dated October 11, 2007, and therefore was never revised to include additional BMPs to eliminate or reduce these pollutants, as required by the Storm Water Permit. Further, in the Facility's 2008-2009 Annual Report the Forged Metals Facility Owner and/or Operator described changes to the Facility's training program to improve storm water monitoring at the Facility, yet the current SWPPP pre-dates these proposed changes and was not revised as required to include these changes.

The Forged Metals Facility Owner and/or Operator has failed to adequately develop, implement, and/or revise a SWPPP, in violation of Section A and Provision E(2) of the Storm

---

[10] The Storm Water Permit defines the Wet Season as October 1 – May 30.

Notice of Violation and Intent to File Suit
May 1, 2014
Page 12 of 16

Water Permit. Every day the Forged Metals Facility operates with an inadequately developed, implemented, and/or properly revised SWPPP is a separate and distinct violation of the Storm Water Permit and the Clean Water Act. The Forged Metals Facility Owner and/or Operator has been in daily and continuous violation of the Storm Water Permit's SWPPP requirements since at least May 1, 2009. These violations are ongoing, and Waterkeeper will include additional violations when information becomes available. The Forged Metals Facility Owner and/or Operator is subject to civil penalties for all violations of the Clean Water Act occurring since May 1, 2009.

**E.   Failure to Develop, Implement, and/or Revise an Adequate Monitoring and Reporting Program**

Section B(1) and Provision E(3) of the Storm Water Permit require facility operators to develop and implement an adequate Monitoring and Reporting Program ("M&RP") by October 1, 1992, or prior to the commencement of industrial activities at a facility, that meets all of the requirements of the Storm Water Permit. The primary objective of the M&RP is to detect and measure the concentrations of pollutants in a facility's discharge to ensure compliance with the Storm Water Permit's Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations. *See* Storm Water Permit, Section B(2). The M&RP must therefore ensure that BMPs are effectively reducing and/or eliminating pollutants at the facility, and must be evaluated and revised whenever appropriate to ensure compliance with the Storm Water Permit. *Id*.

Sections B(3) – B(16) of the Storm Water Permit set forth the M&RP requirements. Specifically, Section B(3) requires dischargers to conduct quarterly visual observations of all drainage areas within their facility for the presence of authorized and unauthorized non-storm water discharges. Section B(4) requires dischargers to conduct visual observations of storm water discharges from one storm event per month during the Wet Season. Sections B(3) and B(4) further require dischargers to document the presence of any floating or suspended material, oil and grease, discolorations, turbidity, odor, and the source of any pollutants. Dischargers must maintain records of observations, observation dates, locations observed, and responses taken to eliminate unauthorized non-storm water discharges and to reduce or prevent pollutants from contacting non-storm water and storm water discharges. *See* Storm Water Permit, Sections B(3) and B(4). Dischargers must revise the SWPPP in response to these observations to ensure that BMPs are effectively reducing and/or eliminating pollutants at the facility. *Id*., Section B(4).

Sections B(5) and B(7) of the Storm Water Permit require dischargers to visually observe and collect samples of storm water from all locations where storm water is discharged. Under Section B(5) of the Storm Water Permit, the facility owners and/or operators are required to collect at least two (2) samples from each discharge location at their facility during the Wet Season. Storm water samples must be analyzed for TSS, pH, SC, total organic carbon or O&G, and other pollutants that are likely to be present in the facility's discharges in significant quantities. *See* Storm Water Permit, Section B(5)(c). The Storm Water Permit requires facilities classified as SIC code 3462, such as the Forged Metals Facility, to also analyze storm water samples for zinc, nitrate + nitrite nitrogen, iron, and aluminum. *Id*.; *see also* Storm Water Permit, Table D, Sector AA.

Notice of Violation and Intent to File Suit
May 1, 2014
Page 13 of 16

Section B(7)(d) of the Storm Water Permit allows for the reduction of sampling locations in very limited circumstances when "industrial activities and BMPs within two or more drainage areas are substantially identical." If a discharger seeks to reduce sampling locations, the "[f]acility operators must document such a determination in the annual report." *Id*.

The Forged Metals Facility Owner and/or Operator has been conducting operations at the Forged Metals Facility with an inadequately developed, implemented, and/or revised M&RP. For example, the Forged Metals Facility Owner and/or Operator has failed and continues to fail to conduct all required quarterly visual observations of unauthorized discharges, in violation of Section B(3) of the Storm Water Permit. Additionally, the Forged Metals Facility Owner and/or Operator has failed to provide the records required by Section B(4) of the Storm Water Permit for the monthly visual observations of storm water discharges.

The Forged Metals Facility Owner and/or Operator also failed to collect and analyze storm water samples as required by the Storm Water Permit. For example, only one storm water sample was collected during the 2009-2010 Wet Season, rather than the two storm water samples required by Section B(5) of the Storm Water Permit, despite qualifying rain events. Further, the Forged Metals Facility Owner and/or Operator failed to collect any storm water samples during the 2008-2009 and 2012-2013 Wet Seasons even though qualifying storm events occurred, in violation of Section B(5) of the Storm Water Permit. *See* Exhibit C. Also, samples collected by Waterkeeper show that copper is present in storm water samples from the Facility in concentrations well above the Benchmark Levels, and thus copper is present in the Facility's storm water discharges in significant quantities. As a result, the Forged Metals Facility Owner and/or Operator is required to analyze its storm water samples from the Facility for this pollutant under Section B(5)(c)(ii) of the Storm Water Permit. However, the Forged Metals Facility Owner and/or Operator has never analyzed any storm water samples for copper.

The Forged Metals Facility Owner's and/or Operator's failure to conduct sampling and monitoring as required by the Storm Water Permit demonstrates that it has failed to develop, implement, and/or revise an M&RP that complies with the requirements of Section B and Provision E(3) of the Storm Water Permit. Every day that the Forged Metals Facility Owner and/or Operator conducts operations in violation of the specific monitoring requirements of the Storm Water Permit, or with an inadequately developed and/or implemented M&RP, is a separate and distinct violation of the Storm Water Permit and the Clean Water Act. The Forged Metals Facility Owner and/or Operator has been in daily and continuous violation of the Storm Water Permit's M&RP requirements every day since at least May 1, 2009. These violations are ongoing, and Waterkeeper will include additional violations when information becomes available. The Forged Metals Facility Owner and/or Operator is subject to civil penalties for all violations of the Clean Water Act occurring since May 1, 2009.

### F.  Failure to Comply with the Storm Water Permit's Reporting Requirements

Section B(14) of the Storm Water Permit requires a permittee to submit an Annual Report to the Regional Board by July 1 of each year. Section B(14) requires that the Annual Report

include a summary of visual observations and sampling results, an evaluation of the visual observation and sampling results, the laboratory reports of sample analysis, the annual comprehensive site compliance evaluation report, an explanation of why a permittee did not implement any activities required, and other information specified in Section B(13).

The Forged Metals Facility Owner and/or Operator failed to submit Annual Reports that comply with the Storm Water Permit reporting requirements. For example, in each Annual Report since the filing of the 2008-2009 Annual Report, the Forged Metals Facility Owner and/or Operator certified that: (1) a complete Annual Comprehensive Site Compliance Evaluation was done pursuant to Section A(9) of the Storm Water Permit; (2) the SWPPP's BMPs address existing potential pollutant sources; and (3) the SWPPP complies with the Storm Water Permit, or will otherwise be revised to achieve compliance. However, information available to Waterkeeper indicates that these certifications are erroneous. For example, as discussed above, storm water samples collected from the Facility have always contained concentrations of pollutants above Benchmark Levels, thus demonstrating that the SWPPP's BMPs have never adequately addressed existing potential pollutant sources. Further, the Facility's SWPPP does not include many elements required by the Storm Water Permit, and thus it is erroneous to certify that the SWPPP complies with the Storm Water Permit.

The Forged Metals Facility Owner and/or Operator has also submitted incomplete Annual Reports. For instance, none of the Annual Reports have included an evaluation of the visual observation and sampling and analysis results, in violation of Section B(14) of the Storm Water Permit. In addition, the facility operator must report any noncompliance with the Storm Water Permit at the time that the Annual Report is submitted, including 1) a description of the noncompliance and its cause, 2) the period of noncompliance, 3) if the noncompliance has not been corrected, the anticipated time it is expected to continue, and 4) steps taken or planned to reduce and prevent recurrence of the noncompliance. Storm Water Permit, Section C(11)(d). The Forged Metals Facility Owner and/or Operator did not report its non-compliance as required.

Finally, the Storm Water Permit requires a permittee whose discharges violate the Storm Water Permit Receiving Water Limitations to submit a written report identifying what additional BMPs will be implemented to achieve water quality standards. Storm Water Permit, Receiving Water Limitations C(3) and C(4). Information available to Coastkeeper indicates that the Forged Metals Facility Owner and/or Operator has failed to submit the reports required by Receiving Water Limitations C(3) and C(4) of the Storm Water Permit. As such, the Forged Metals Facility Owner and/or Operator is in daily violation of this requirement of the Storm Water Permit.

Information available to Waterkeeper indicates that the Forged Metals Facility Owner and/or Operator has submitted incomplete and/or incorrect Annual Reports that fail to comply with the Storm Water Permit. As such, the Forged Metals Facility Owner and/or Operator is in daily violation of the Storm Water Permit. Every day the Forged Metals Facility Owner and/or Operator conducts operations at the Facility without reporting as required by the Storm Water Permit is a separate and distinct violation of the Storm Water Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. §1311(a). The Forged Metals Facility Owner and/or Operator has been in daily and continuous violation of the Storm Water Permit's reporting requirements every

day since at least May 1, 2009. These violations are ongoing. The Forged Metals Facility Owner and/or Operator is subject to civil penalties for all violations of the Clean Water Act occurring since May 1, 2009.

## IV.   RELIEF AND PENALTIES SOUGHT FOR VIOLATIONS OF THE CLEAN WATER ACT

Pursuant to Section 309(d) of the Clean Water Act, 33 U.S.C. § 1319(d), and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. § 19.4, each separate violation of the Clean Water Act subjects the violator to a penalty for all violations occurring during the period commencing five (5) years prior to the date of a notice of intent to file suit letter. These provisions of law authorize civil penalties of up to $37,500 per day per violation for all Clean Water Act violations on and after January 12, 2009. In addition to civil penalties, Waterkeeper will seek injunctive relief preventing further violations of the Clean Water Act pursuant to Sections 505(a) and (d), 33 U.S.C. § 1365(a) and (d), declaratory relief, and such other relief as permitted by law. Lastly, pursuant to Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), Waterkeeper will seek to recover its costs, including attorneys' and experts' fees, associated with this enforcement action.

## V.   CONCLUSION

Waterkeeper is willing to discuss effective remedies for the violations described in this Notice Letter. However, upon expiration of the 60-day notice period, Waterkeeper will file a citizen suit under Section 505(a) of the Clean Water Act for Union Pacific's violations of the Storm Water Permit. Please direct all communications to Waterkeeper's legal counsel:

Daniel Cooper
daniel@lawyersforcleanwater.com
Caroline Koch
caroline@lawyersforcleanwater.com
Lawyers for Clean Water, Inc.
1004-A O'Reilly Avenue
San Francisco, California 94129
Tel: (415) 440-6520

Sincerely,

Garry Brown
Executive Director
Orange County Coastkeeper

Notice of Violation and Intent to File Suit
May 1, 2014
Page 16 of 16

## SERVICE LIST

**<u>VIA U.S. MAIL</u>**

Gina McCarthy
Administrator
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

Jared Blumenfeld
Regional Administrator
U.S. Environmental Protection Agency
Region IX
75 Hawthorne Street
San Francisco, California 94105


Thomas Howard
Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, California 95812

Kurt Berchtold
Executive Officer
Santa Ana Regional Water Quality Control Board
3737 Main Street, Suite 500
Riverside, California 92501

**Exhibit A**

| Sample collected by Waterkeeper (W) or Discharger (D) | Date of sample collection | Sample Location | Parameter | Result | Units | Benchmark | Magnitude of Benchmark Exceedance | California Toxics Rule Criteria | Magnitude of CTR Exceedance |
|---|---|---|---|---|---|---|---|---|---|
| | | | | 2008/2009 WET SEASON | | | | | |
| | | no samples collected | | | | | | | |
| | | | | 2009/2010 WET SEASON | | | | | |
| D | 12/7/09 | Drain #1 North | Zinc | 0.267 | mg/L | 0.11 | 2.427272727 | 0.12 | 2.2 |
| D | 12/7/09 | Drain #1 North | N+N | 0.395 | mg/L | 0.068 | 5.808823529 | none | N/A |
| D | 12/7/09 | Drain #1 North | Iron | 1.33 | mg/L | 1 | 1.33 | none | N/A |
| D | 12/7/09 | Drain #1 North | Aluminum | 1.11 | mg/L | 0.75 | 1.48 | none | N/A |
| D | 12/7/09 | Drain #2 South | Zinc | 0.16 | mg/L | 0.11 | 1.454545455 | 0.12 | 1.3 |
| D | 12/7/09 | Drain #2 South | N+N | 0.555 | mg/L | 0.068 | 8.161764706 | none | N/A |
| D | 12/7/09 | Drain #2 South | Iron | 1.39 | mg/L | 1 | 1.39 | none | N/A |
| D | 12/7/09 | Drain #2 South | Aluminum | 0.959 | mg/L | 0.75 | 1.278666667 | none | N/A |
| | | | | 2010/2011 WET SEASON | | | | | |
| D | 10/30/10 | Drain #1 | Zinc | 0.55 | mg/L | 0.11 | 5 | 0.12 | 4.6 |
| D | 10/30/10 | Drain #1 | N+N | 1.84 | mg/L | 0.068 | 27.05882353 | none | N/A |
| D | 10/30/10 | Drain #1 | Iron | 2.05 | mg/L | 1 | 2.05 | none | N/A |
| D | 10/30/10 | Drain #1 | Aluminum | 1.54 | mg/L | 0.75 | 2.053333333 | none | N/A |
| D | 10/30/10 | Drain #2 | Zinc | 0.279 | mg/L | 0.11 | 2.536363636 | 0.12 | 2.3 |
| D | 10/30/10 | Drain #2 | N+N | 13 | mg/L | 0.068 | 191.1764706 | none | N/A |
| D | 10/30/10 | Drain #2 | Iron | 3.11 | mg/L | 1 | 3.11 | none | N/A |
| D | 10/30/10 | Drain #2 | Aluminum | 1.34 | mg/L | 0.75 | 1.786666667 | none | N/A |
| D | 10/30/10 | Drain #2 | Specific Conductance | 303 | umohs/cm | 200 | 1.515 | none | N/A |
| D | 12/17/10 | Drain #1 | Total Suspended Solids | 178 | mg/L | 100 | 1.78 | none | N/A |
| D | 12/17/10 | Drain #1 | Oil & Grease | 35.2 | mg/L | 15 | 2.346666667 | none | N/A |
| D | 12/17/10 | Drain #1 | Zinc | 0.555 | mg/L | 0.11 | 5.045454545 | 0.12 | 4.6 |
| D | 12/17/10 | Drain #1 | N+N | 1.88 | mg/L | 0.068 | 27.64705882 | none | N/A |
| D | 12/17/10 | Drain #1 | Iron | 11.3 | mg/L | 1 | 11.3 | none | N/A |
| D | 12/17/10 | Drain #1 | Aluminum | 6.8 | mg/L | 0.75 | 9.066666667 | none | N/A |
| D | 12/17/10 | Drain #2 | Zinc | 0.321 | mg/L | 0.11 | 2.918181818 | 0.12 | 2.7 |
| D | 12/17/10 | Drain #2 | N+N | 0.566 | mg/L | 0.068 | 8.323529412 | none | N/A |
| D | 12/17/10 | Drain #2 | Iron | 2.21 | mg/L | 1 | 2.21 | none | N/A |
| D | 12/17/10 | Drain #2 | Aluminum | 1.7 | mg/L | 0.75 | 2.266666667 | none | N/A |
| | | | | 2011/2012 WET SEASON | | | | | |
| D | 11/4/11 | Drain #1 North | Zinc | 0.19 | mg/L | 0.11 | 1.727272727 | 0.12 | 1.6 |
| D | 11/4/11 | Drain #1 North | N+N | 1.1 | mg/L | 0.068 | 16.17647059 | none | N/A |
| D | 11/4/11 | Drain #2 South | Zinc | 0.27 | mg/L | 0.11 | 2.454545455 | 0.12 | 2.3 |
| D | 11/4/11 | Drain #2 South | N+N | 4.2 | mg/L | 0.068 | 61.76470588 | none | N/A |
| D | 11/4/11 | Drain #2 South | Iron | 2.5 | mg/L | 1 | 2.5 | none | N/A |
| D | 11/4/11 | Drain #2 South | Aluminum | 1.6 | mg/L | 0.75 | 2.133333333 | none | N/A |
| D | 2/15/12 | Drain #1 North | Chemical Oxygen Demand | 180 | mg/L | 110 | 1.636363636 | none | N/A |
| D | 2/15/12 | Drain #1 North | Zinc | 0.3 | mg/L | 0.11 | 2.727272727 | 0.12 | 2.5 |
| D | 2/15/12 | Drain #1 North | N+N | 4 | mg/L | 0.068 | 58.82352941 | none | N/A |
| D | 2/15/12 | Drain #1 North | Iron | 2.4 | mg/L | 1 | 2.4 | none | N/A |
| D | 2/15/12 | Drain #1 North | Aluminum | 1.7 | mg/L | 0.75 | 2.266666667 | none | N/A |
| D | 2/15/12 | Drain #1 North | Specific Conductance | 280 | umohs/cm | 200 | 1.4 | none | N/A |
| D | 2/15/12 | Drain #2 South | Oil & Grease | 26 | mg/L | 15 | 1.733333333 | none | N/A |
| D | 2/15/12 | Drain #2 South | Chemical Oxygen Demand | 330 | mg/L | 110 | 3 | none | N/A |
| D | 2/15/12 | Drain #2 South | Zinc | 0.23 | mg/L | 0.11 | 2.090909091 | 0.12 | 1.9 |
| D | 2/15/12 | Drain #2 South | N+N | 0.63 | mg/L | 0.068 | 9.264705882 | none | N/A |
| D | 2/15/12 | Drain #2 South | Iron | 3.6 | mg/L | 1 | 3.6 | none | N/A |
| D | 2/15/12 | Drain #2 South | Aluminum | 1.8 | mg/L | 0.75 | 2.4 | none | N/A |
| | | | | 2012/2013 WET SEASON | | | | | |
| W | 2/28/14 | South Drain | Zinc | 0.33 | mg/L | 0.11 | 3 | 0.12 | 2.8 |
| W | 2/28/14 | South Drain | Iron | 6.2 | mg/L | 1 | 6.2 | none | N/A |
| W | 2/28/14 | South Drain | Aluminum | 2.8 | mg/L | 0.75 | 3.733333333 | none | N/A |
| W | 2/28/14 | South Drain | Copper | 0.14 | mg/L | 0.0123 | 11.38211382 | none | N/A |
| W | 4/1/14 | South Drain | Zinc | 0.49 | mg/L | 0.11 | 4.454545455 | 0.12 | 4.1 |
| W | 4/1/14 | South Drain | Iron | 3.3 | mg/L | 1 | 3.3 | none | N/A |
| W | 4/1/14 | South Drain | Aluminum | 1.9 | mg/L | 0.75 | 2.533333333 | none | N/A |
| W | 4/1/14 | South Drain | Copper | 0.13 | mg/L | 0.0123 | 10.56910569 | none | N/A |

**Exhibit B**

| Sample collected by Waterkeeper (W) or Discharger (D) | Date of sample collection | Sample Location | Parameter | Result | Units | Benchmark | Magnitude of Benchmark Exceedance | California Toxics Rule Criteria | Magnitude of CTR Exceedance |
|---|---|---|---|---|---|---|---|---|---|
|  | 2008/2009 WET SEASON | | | | | | | | |
|  | no samples collected | | | | | | | | |
|  | 2009/2010 WET SEASON | | | | | | | | |
| D | 12/7/09 | Drain #1 North | Zinc | 0.267 | mg/L | 0.11 | 2.427272727 | 0.12 | 2.2 |
| D | 12/7/09 | Drain #1 North | N+N | 0.395 | mg/L | 0.068 | 5.808823529 | none | N/A |
| D | 12/7/09 | Drain #1 North | Iron | 1.33 | mg/L | 1 | 1.33 | none | N/A |
| D | 12/7/09 | Drain #1 North | Aluminum | 1.11 | mg/L | 0.75 | 1.48 | none | N/A |
| D | 12/7/09 | Drain #1 North | Total Suspended Solids | 38 | mg/L | 100 | 0 | none | N/A |
| D | 12/7/09 | Drain #1 North | pH | 7.3 | s.u. | 6.0-9.0 | 0 | 6.5-8.5 | N/A |
| D | 12/7/09 | Drain #1 North | Specific Conductance | 35.5 | umohs/cm | 200 | 0 | none | N/A |
| D | 12/7/09 | Drain #2 South | Zinc | 0.16 | mg/L | 0.11 | 1.454545455 | 0.12 | 1.3 |
| D | 12/7/09 | Drain #2 South | N+N | 0.555 | mg/L | 0.068 | 8.161764706 | none | N/A |
| D | 12/7/09 | Drain #2 South | Iron | 1.39 | mg/L | 1 | 1.39 | none | N/A |
| D | 12/7/09 | Drain #2 South | Aluminum | 0.959 | mg/L | 0.75 | 1.278666667 | none | N/A |
| D | 12/7/09 | Drain #2 South | Total Suspended Solids | 60 | mg/L | 100 | 0 | none | N/A |
| D | 12/7/09 | Drain #2 South | pH | 7.3 | s.u. | 6.0-9.0 | 0 | 6.5-8.5 | N/A |
| D | 12/7/09 | Drain #2 South | Specific Conductance | 49.3 | umohs/cm | 200 | 0 | none | N/A |
|  | 2010/2011 WET SEASON | | | | | | | | |
| D | 10/30/10 | Drain #1 | Zinc | 0.55 | mg/L | 0.11 | 5 | 0.12 | 4.6 |
| D | 10/30/10 | Drain #1 | N+N | 1.84 | mg/L | 0.068 | 27.05882353 | none | N/A |
| D | 10/30/10 | Drain #1 | Iron | 2.05 | mg/L | 1 | 2.05 | none | N/A |
| D | 10/30/10 | Drain #1 | Aluminum | 1.54 | mg/L | 0.75 | 2.053333333 | none | N/A |
| D | 10/30/10 | Drain #1 | Total Suspended Solids | 88 | mg/L | 100 | 0 | none | N/A |
| D | 10/30/10 | Drain #1 | pH | 7 | s.u. | 6.0-9.0 | 0 | 6.5-8.5 | N/A |
| D | 10/30/10 | Drain #1 | Specific Conductance | 157 | umohs/cm | 200 | 0 | none | N/A |
| D | 10/30/10 | Drain #2 | Zinc | 0.279 | mg/L | 0.11 | 2.536363636 | 0.12 | 2.3 |
| D | 10/30/10 | Drain #2 | N+N | 13 | mg/L | 0.068 | 191.1764706 | none | N/A |
| D | 10/30/10 | Drain #2 | Iron | 3.11 | mg/L | 1 | 3.11 | none | N/A |
| D | 10/30/10 | Drain #2 | Aluminum | 1.34 | mg/L | 0.75 | 1.786666667 | none | N/A |
| D | 10/30/10 | Drain #2 | Specific Conductance | 303 | umohs/cm | 200 | 1.515 | none | N/A |
| D | 10/30/10 | Drain #2 | Total Suspended Solids | 65 | mg/L | 100 | 0 | none | N/A |
| D | 10/30/10 | Drain #2 | pH | 6.9 | s.u. | 6.0-9.0 | 0 | 6.5-8.5 | N/A |
| D | 10/30/10 | Drain #2 | Oil & Grease | 7.3 | mg/L | 15 | 0 | none | N/A |
| D | 12/17/10 | Drain #1 | Total Suspended Solids | 178 | mg/L | 100 | 1.78 | none | N/A |
| D | 12/17/10 | Drain #1 | Oil & Grease | 35.2 | mg/L | 15 | 2.346666667 | none | N/A |
| D | 12/17/10 | Drain #1 | Zinc | 0.555 | mg/L | 0.11 | 5.045454545 | 0.12 | 4.6 |
| D | 12/17/10 | Drain #1 | N+N | 1.88 | mg/L | 0.068 | 27.64705882 | none | N/A |
| D | 12/17/10 | Drain #1 | Iron | 11.3 | mg/L | 1 | 11.3 | none | N/A |
| D | 12/17/10 | Drain #1 | Aluminum | 6.8 | mg/L | 0.75 | 9.066666667 | none | N/A |
| D | 12/17/10 | Drain #1 | pH | 8.1 | s.u. | 6.0-9.0 | 0 | 6.5-8.5 | N/A |
| D | 12/17/10 | Drain #1 | Specific Conductance | 148 | umohs/cm | 200 | 0 | none | N/A |
| D | 12/17/10 | Drain #2 | Zinc | 0.321 | mg/L | 0.11 | 2.918181818 | 0.12 | 2.7 |
| D | 12/17/10 | Drain #2 | N+N | 0.566 | mg/L | 0.068 | 8.323529412 | none | N/A |
| D | 12/17/10 | Drain #2 | Iron | 2.21 | mg/L | 1 | 2.21 | none | N/A |
| D | 12/17/10 | Drain #2 | Aluminum | 2.0 | mg/L | 0.75 | 2.666666667 | none | N/A |
| D | 12/17/10 | Drain #2 | Total Suspended Solids | 48.5 | mg/L | 100 | 0 | none | N/A |
| D | 12/17/10 | Drain #2 | pH | 7.7 | s.u. | 6.0-9.0 | 0 | 6.5-8.5 | N/A |
| D | 12/17/10 | Drain #2 | Specific Conductance | 55.6 | umohs/cm | 200 | 0 | none | N/A |
|  | 2011/2012 WET SEASON | | | | | | | | |
| D | 11/4/11 | Drain #1 North | Zinc | 0.19 | mg/L | 0.11 | 1.727272727 | 0.12 | 1.6 |
| D | 11/4/11 | Drain #1 North | N+N | 1.1 | mg/L | 0.068 | 16.17647059 | none | N/A |
| D | 11/4/11 | Drain #1 North | Total Suspended Solids | 18 | mg/L | 100 | 0 | none | N/A |
| D | 11/4/11 | Drain #1 North | pH | 6.89 | s.u. | 6.0-9.0 | N/A | 6.5-8.5 | N/A |
| D | 11/4/11 | Drain #1 North | Specific Conductance | 60 | umohs/cm | 200 | 0 | none | N/A |
| D | 11/4/11 | Drain #1 North | Iron | 0.56 | mg/L | 1 | 0 | none | N/A |
| D | 11/4/11 | Drain #1 North | Aluminum | 0.55 | mg/L | 0.75 | 0 | none | N/A |
| D | 11/4/11 | Drain #2 South | Zinc | 0.27 | mg/L | 0.11 | 2.454545455 | 0.12 | 2.3 |
| D | 11/4/11 | Drain #2 South | N+N | 4.2 | mg/L | 0.068 | 61.76470588 | none | N/A |
| D | 11/4/11 | Drain #2 South | Iron | 2.5 | mg/L | 1 | 2.5 | none | N/A |

| Sample collected by Waterkeeper (W) or Discharger (D) | Date of sample collection | Sample Location | Parameter | Result | Units | Benchmark | Magnitude of Benchmark Exceedance | California Toxics Rule Criteria | Magnitude of CTR Exceedance |
|---|---|---|---|---|---|---|---|---|---|
| D | 11/4/11 | Drain #2 South | Aluminum | 1.6 | mg/L | 0.75 | 2.133333333 | none | N/A |
| D | 11/4/11 | Drain #2 South | Total Suspended Solids | 55 | mg/L | 100 | 0 | none | N/A |
| D | 11/4/11 | Drain #2 South | pH | 7.38 | s.u. | 6.0-9.0 | N/A | 6.5-8.5 | N/A |
| D | 11/4/11 | Drain #2 South | Specific Conductance | 170 | umohs/cm | 200 | 0 | none | N/A |
| D | 11/4/11 | Drain #2 South | Oil & Grease | 5.9 | mg/L | 15 | 0 | none | N/A |
| D | 2/15/12 | Drain #1 North | Chemical Oxygen Demand | 180 | mg/L | 110 | 1.636363636 | none | N/A |
| D | 2/15/12 | Drain #1 North | Zinc | 0.3 | mg/L | 0.11 | 2.727272727 | 0.12 | 2.5 |
| D | 2/15/12 | Drain #1 North | N+N | 4 | mg/L | 0.068 | 58.82352941 | none | N/A |
| D | 2/15/12 | Drain #1 North | Iron | 2.4 | mg/L | 1 | 2.4 | none | N/A |
| D | 2/15/12 | Drain #1 North | Aluminum | 1.7 | mg/L | 0.75 | 2.266666667 | none | N/A |
| D | 2/15/12 | Drain #1 North | Specific Conductance | 190 | umohs/cm | 200 | 0 | none | N/A |
| D | 2/15/12 | Drain #1 North | Total Suspended Solids | 66 | mg/L | 100 | 0 | none | N/A |
| D | 2/15/12 | Drain #1 North | pH | 7.27 | s.u. | 6.0-9.0 | N/A | 6.5-8.5 | N/A |
| D | 2/15/12 | Drain #2 South | Specific Conductance | 280 | umohs/cm | 200 | 1.4 | none | N/A |
| D | 2/15/12 | Drain #2 South | Oil & Grease | 26 | mg/L | 15 | 1.733333333 | none | N/A |
| D | 2/15/12 | Drain #2 South | Chemical Oxygen Demand | 330 | mg/L | 110 | 3 | none | N/A |
| D | 2/15/12 | Drain #2 South | Zinc | 0.23 | mg/L | 0.11 | 2.090909091 | 0.12 | 1.9 |
| D | 2/15/12 | Drain #2 South | N+N | 0.63 | mg/L | 0.068 | 9.264705882 | none | N/A |
| D | 2/15/12 | Drain #2 South | Iron | 3.6 | mg/L | 1 | 3.6 | none | N/A |
| D | 2/15/12 | Drain #2 South | Aluminum | 1.8 | mg/L | 0.75 | 2.4 | none | N/A |
| D | 2/15/12 | Drain #2 South | Total Suspended Solids | 82 | mg/L | 100 | 0 | none | N/A |
| D | 2/15/12 | Drain #2 North | pH | 8.34 | s.u. | 6.0-9.0 | N/A | 6.5-8.5 | N/A |
| | | **2012/2013 WET SEASON** | | | | | | | |
| W | 2/28/14 | South Drain | Zinc | 0.33 | mg/L | 0.11 | 3 | 0.12 | 2.8 |
| W | 2/28/14 | South Drain | Iron | 6.2 | mg/L | 1 | 6.2 | none | N/A |
| W | 2/28/14 | South Drain | Aluminum | 2.8 | mg/L | 0.75 | 3.733333333 | none | N/A |
| W | 2/28/14 | South Drain | Copper | 0.14 | mg/L | 0.0123 | 11.38211382 | none | N/A |
| W | 4/1/14 | South Drain | Zinc | 0.49 | mg/L | 0.11 | 4.454545455 | 0.12 | 4.1 |
| W | 4/1/14 | South Drain | Iron | 3.3 | mg/L | 1 | 3.3 | none | N/A |
| W | 4/1/14 | South Drain | Aluminum | 1.9 | mg/L | 0.75 | 2.533333333 | none | N/A |
| W | 4/1/14 | South Drain | Copper | 0.13 | mg/L | 0.0123 | 10.56910569 | none | N/A |

**Exhibit C**

| San Bernardino County Yard Rain Gauge | | |
|---|---|---|
| Date | Day of the Week | Daily Precip (inches) |
| 11/28/09 | Saturday | 0.39 |
| 12/7/09 | Monday | 0.91 |
| 12/13/09 | Sunday | 0.2 |
| 12/22/09 | Tuesday | 0.28 |
| 1/17/10 | Sunday | 0.15 |
| 1/21/10 | Thursday | 2.4 |
| 1/22/10 | Friday | 1.7 |
| 2/10/10 | Wednesday | 0.27 |
| 2/21/10 | Sunday | 0.16 |
| 2/22/10 | Monday | 0.24 |
| 2/27/10 | Saturday | 0.86 |
| 2/28/10 | Sunday | 0.36 |
| 3/6/10 | Saturday | 0.24 |
| 3/7/10 | Sunday | 1.34 |
| 4/12/10 | Monday | 0.67 |
| 4/22/10 | Thursday | 0.16 |
| 10/25/10 | Monday | 0.27 |
| 11/8/10 | Monday | 0.28 |
| 12/5/10 | Sunday | 0.28 |
| 12/16/10 | Thursday | 0.23 |
| 12/17/10 | Friday | 0.36 |
| 12/18/10 | Saturday | 0.27 |
| 12/19/10 | Sunday | 2.4 |
| 12/20/10 | Monday | 2.6 |
| 12/21/10 | Tuesday | 1.97 |
| 12/22/10 | Wednesday | 2.95 |
| 12/25/10 | Saturday | 0.16 |
| 12/29/10 | Wednesday | 0.39 |
| 1/2/11 | Sunday | 0.2 |
| 1/30/11 | Sunday | 0.51 |
| 2/17/11 | Thursday | 0.16 |
| 2/18/11 | Friday | 0.19 |
| 2/19/11 | Saturday | 0.95 |
| 2/25/11 | Friday | 0.31 |
| 2/26/11 | Saturday | 1.03 |
| 5/18/11 | Wednesday | 0.31 |
| 10/5/11 | Wednesday | 0.94 |
| 11/4/11 | Friday | 0.36 |
| 11/20/11 | Sunday | 0.75 |
| 12/12/11 | Monday | 0.43 |

| | | |
|---|---|---|
| 1/21/12 | Saturday | 0.4 |
| 1/23/12 | Monday | 0.23 |
| 2/15/12 | Wednesday | 0.12 |
| 2/27/12 | Monday | 0.28 |
| 3/17/12 | Saturday | 0.79 |
| 3/18/12 | Sunday | 0.24 |
| 3/25/12 | Sunday | 0.23 |
| 3/26/12 | Monday | 0.16 |
| 4/11/12 | Wednesday | 0.2 |
| 4/13/12 | Friday | 0.51 |
| 4/26/12 | Thursday | 0.55 |
| 10/11/12 | Thursday | 0.28 |
| 11/8/12 | Thursday | 0.39 |
| 11/30/12 | Friday | 0.31 |
| 12/12/12 | Wednesday | 0.12 |
| 12/13/12 | Thursday | 1.49 |
| 12/18/12 | Tuesday | 0.2 |
| 12/24/12 | Monday | 0.31 |
| 12/26/12 | Wednesday | 0.24 |
| 12/29/12 | Saturday | 0.28 |
| 1/6/13 | Sunday | 0.11 |
| 1/25/13 | Friday | 0.55 |
| 1/27/13 | Sunday | 0.24 |
| 2/8/13 | Friday | 0.55 |
| 2/19/13 | Tuesday | 0.31 |
| 2/20/13 | Wednesday | 0.36 |
| 3/8/13 | Friday | 0.59 |
| 10/9/13 | Wednesday | 0.47 |
| 11/21/13 | Thursday | 3.35 |
| 12/19/13 | Thursday | 0.16 |
| 2/27/14 | Thursday | 0.2 |
| 2/28/14 | Friday | 1.89 |
| 3/1/14 | Saturday | 0.43 |
| 4/2/14 | Wednesday | 0.27 |
| 4/25/14 | Friday | 0.36 |
| 4/26/14 | Saturday | 0.39 |