LAWYERS FOR CLEAN WATER, INC.
Daniel Cooper (Bar No. 153576)
    Email:  daniel@lawyerforcleanwater.com
Caroline Koch (Bar No. 266068)
    Email:  caroline@lawyersforcleanwater.com
1004-A O'Reilly Avenue
San Francisco, California 94129
Telephone:  (415) 440-6520
Facsimile:   (415) 440-4155

*Attorneys for Plaintiffs*
INLAND EMPIRE WATERKEEPER and ORANGE COUNTY COASTKEEPER

*Additional Plaintiffs' Counsel Listed On Next Page*

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INLAND EMPIRE WATERKEEPER, a program of ORANGE COUNTY COASTKEEPER; ORANGE COUNTY COASTKEEPER, a California non-profit corporation, <br><br>        Plaintiffs, <br>   vs. <br><br> FORGED METALS, INC., a California corporation; <br><br>        Defendant. | Civil Case No. 8:14-cv-01166-MWF-SS <br><br> **CONSENT DECREE** |

INLAND EMPIRE WATERKEEPER
Colin Kelly (Bar No. 266956)
        Email:  colin@coastkeeper.org
6876 Indiana Avenue, Suite D
Riverside, California 92506
Telephone:  (951) 530-8823
Facsimile:   (951) 530-8824

ORANGE COUNTY COASTKEEPER
Colin Kelly (Bar No. 266956)
        Email:  colin@coastkeeper.org
3151 Airway Avenue, Suite F-110
Costa Mesa, California 92626
Telephone:  (714) 850-1965
Facsimile:   (714) 850-1592

**CONSENT DECREE**

The following Consent Decree is entered into by and between Plaintiffs Inland Empire Waterkeeper and Orange County Coastkeeper ("Plaintiffs" or "Waterkeeper"), and Defendant Forged Metals, Inc. ("Defendant" or "FMI"). The entities entering into this Consent Decree are each an individual "Settling Party" and collectively "Settling Parties."

**WHEREAS**, Orange County Coastkeeper is a non-profit public benefit corporation;

**WHEREAS**, Inland Empire Waterkeeper is a program of Orange County Coastkeeper;

**WHEREAS**, together, Inland Empire Waterkeeper and Orange County Coastkeeper are dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of local surface waters;

**WHEREAS**, FMI operates a metal forging facility at 10685 Beech Avenue, Fontana, California 92337 ("Facility");

**WHEREAS**, Waterkeeper alleges that FMI is an owner and operator of the Facility;

**WHEREAS**, discharges from the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit NO CAS000001 ("Storm Water Permit") and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U. S. C. §§ 1311(a), 1342;

**WHEREAS**, on May 1, 2014, Waterkeeper issued a 60-day notice letter ("Notice Letter") to FMI alleging violations of the Storm Water Permit and the Clean Water Act at the Facility;

**WHEREAS**, on July 24, 2014, Waterkeeper filed a complaint against FMI in the United States District Court, Central District of California (Civil Case No. 8:14-cv-01166-MWF-SS) (hereinafter "Complaint");

**WHEREAS**, on October 24, 2014, Waterkeeper issued a supplemental 60-day

1   notice letter ("Supplemental Notice Letter") to Firth Rixson Inc. as an owner and/or

2   operator of the Facility alleging violations of the Storm Water Permit and the Clean

3   Water Act;

4       **WHEREAS**, on March 24, 2015, Shawn Gould, the General Manager of FMI,

5   signed a declaration under penalty of perjury declaring that FMI controls industrial

6   activities and storm water management at the Facility, and that JFB Firth Rixson, Inc.,

7   FR Acquisition Corporation (US) Inc., and Alcoa Inc. are not responsible for operating

8   the Facility or for implementing the Facility's Storm Water Pollution Prevention Plan;

9       **WHEREAS**, FMI is a fully capitalized, active corporation registered in California,

10  and observes all corporate formalities;

11      **WHEREAS**, Waterkeeper alleges FMI to be in violation of the substantive and

12  procedural requirements of the Storm Water Permit and the Clean Water Act;

13      **WHEREAS**, Schlosser Forge Company operates an industrial facility at 10601

14  Beech Avenue, Fontana, California 91730 ("Schlosser Facility"), which is adjacent to the

15  Facility and is currently regulated by the Storm Water Permit under WDID # 8

16  36I024936;

17      **WHEREAS**, FMI and the owner and/or operator of the Schlosser Facility intend

18  to consolidate Storm Water Permit coverage for the Facility and the Schlosser Facility, as

19  those facilities are adjacent and discharge storm water associated with industrial

20  activities from common discharge locations (the "Premises");

21      **WHEREAS**, FMI will be responsible for the consolidated Storm Water Permit

22  coverage and will be responsible for implementation of the storm water program and

23  compliance with the Storm Water Permit and compliance with the Consent Decree, and

24  the FMI EHS Manager shall have authority and responsibility over the entire Premises

25  for storm water management purposes;

26      **WHEREAS**, FMI denies all allegations in the Notice Letter and Complaint;

27      **WHEREAS**, the Settling Parties have agreed that it is in their mutual interest to

28  enter into a Consent Decree setting forth terms and conditions appropriate to resolving

the allegations set forth in the Notice Letter and Complaint without further proceedings;

**WHEREAS**, all actions taken by FMI pursuant to this Consent Decree shall be made in compliance with all applicable Federal and State laws and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.      The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A).

2.      Venue is appropriate in the Central District pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Premises is located within this District.

3.      The Complaint states claims upon which relief may be granted pursuant to Section 505 of the Clean Water Act, 33 U.S.C. § 1365.

4.      Plaintiffs have standing to bring this action.

5.      The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

**I.      AGENCY REVIEW AND TERM OF CONSENT DECREE**

6.      Plaintiffs shall submit this Consent Decree to the United States Department of Justice and the Environmental Protection Agency (collectively "Federal Agencies") within three (3) business days of the final signature of the Settling Parties for agency review consistent with 40 C.F.R. § 135.5. In the event that the Federal Agencies object to entry of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time. Following the Federal Agencies' review, the Parties shall submit the Consent Decree to the Court for entry.

7.      The term "Effective Date" as used in this Consent Decree shall mean the day this Consent Decree is fully executed by the Settling Parties.

8.      This Consent Decree shall terminate three (3) years from the Effective Date, unless there is an ongoing, unresolved dispute regarding FMI's compliance with this Consent Decree, in which case the Consent Decree will terminate within fifteen (15) days of notice by the Settling Parties that the dispute has been fully resolved.

9.      <u>Early Termination</u>. Notwithstanding paragraph eight (8) above, if during the 2015-2016 reporting year[1] storm water samples for the Premises collected in compliance with paragraph twenty-one (21) demonstrate no more than four (4) exceedances of the Numeric Targets set out at Table 1 below and no more than two (2) exceedances of the Table 1 Numeric Targets during the 2016-2017 reporting year and at least five (5) rain events are sampled each reporting year, this Consent Decree shall terminate two (2) years from the Effective Date, unless there is an ongoing, unresolved dispute regarding FMI's compliance with this Consent Decree, in which case the Consent Decree will terminate within fifteen (15) days of notice by the Settling Parties that the dispute has been fully resolved.

## II.     **COMMITMENTS OF THE SETTLING PARTIES**

### A.     **Storm Water Permit Coverage**

10.     At least within thirty (30) days of the Effective Date, pursuant to and in compliance with Provision E.9 of the Storm Water Permit FMI will submit a Notice of Termination ("NOT") to the Regional Board pursuant to and in compliance with Provision E.9 of the Storm Water Permit for the purpose of consolidating Storm Water Permit Coverage at the Facility with the Schlosser Facility.

11.     No later than August 14, 2015, pursuant to and in compliance with the requirements of Provision E and Attachment 3 of the Storm Water Permit, FMI will submit a Notice of Intent to Comply with the Storm Water Permit ("NOI") to the State Board identifying FMI as the permittee for the consolidated Permit coverage.

### B.     **Schlosser Facility**

12.     <u>Site Inspection</u>. Within forty-five (45) days of the Effective Date, on a

---

[1] A "reporting year" is July 1 to June 30.

mutually-acceptable date taking into account site operations and activities, Waterkeeper and its representatives will conduct a site inspection of the Schlosser Facility. The site inspection of the Schlosser Facility will be conducted according to the terms set out at paragraphs 35.2 through 35.5 below.

13. <u>Schlosser Facility BMPs</u>. Within thirty (30) days of the date of the site inspection of the Schlosser Facility, FMI shall submit a plan identifying the BMPs implemented and/or to be implemented at the Schlosser Facility to reduce and/or eliminate the discharge of pollutants at the Schlosser Facility that are designed to achieve the limits in Table 1 below ("Schlosser Facility BMP Plan"). The Schlosser Facility BMP Plan will include the BMPs listed in paragraphs sixteen (16), seventeen (17), or nineteen (19) below that are specific to the Schlosser Facility, as well any additional BMPs that FMI identifies pursuant to the Site Inspection discussed in paragraph twelve (12).

      13.1. <u>Time Schedules.</u> The Schlosser Facility BMP Plan will include time schedule(s) for implementation of the identified BMPs to ensure that all Schlosser Facility BMP Plan measure are implemented as soon as possible, but in no case later than October 1, 2015.

      13.2. <u>Waterkeeper Review</u>. Waterkeeper shall have fifteen (15) days upon receipt of the Schlosser Facility BMP Plan to provide FMI with comments. Within fifteen (15) days of FMI's receipt of Waterkeeper's comments, FMI shall provide written responses to Waterkeeper's comments that either accept and incorporate Waterkeeper's comments in the FMI Storm Water Pollution Prevention Plan ("SWPPP") or explain the basis for FMI's rejection of Waterkeeper's recommendations.

**C.**    **Storm Water Pollution Control Best Management Practices**

14. In addition to maintaining the current Best Management Practices ("BMPs") at the Premises, FMI shall develop and implement the BMPs identified herein, as well as any other BMPs necessary to comply with the provisions of this Consent Decree and the

1  Storm Water Permit. Specifically, FMI shall develop and implement BMPs to prevent

2  and/or to reduce contamination in storm water discharged from the Premises consistent

3  with use of the Best Available Technology Economically Achievable ("BAT") and the

4  Best Conventional Treatment Technology ("BCT") and/or in compliance with water

5  quality standards ("WQS").

6      15.    Listing the BMPs identified herein and describing elements of the M&RP

7  shall not preclude FMI from implementing BMPs not listed, and does not require

8  amendment of this Consent Decree in the event that FMI implements additional BMPs

9  beyond those listed or substitutes BMPs or M&RP elements that are designed to achieve

10 the Table 1 Numeric Targets for those listed herein, or if changes in operations or the

11 industrial activities at the Premises eliminate pollutant sources identified in the SWPPP

12 and/or this Consent Decree making the BMPs previously associated with those pollutant

13 sources unnecessary.

14     16.    <u>Source Controls</u>. Within forty-five (45) days of the Effective Date of the

15 Consent Decree, FMI will, at a minimum, implement the following source controls.

16         16.1.   Complete an evaluation of all outdoor storage of miscellaneous

17            equipment, obsolete tooling, and/or miscellaneous materials, e.g.,

18            scrap metal, at the Facility, and eliminate all outdoor storage of

19            miscellaneous equipment, obsolete tooling, and/or miscellaneous

20            materials, e.g., scrap metal, unless impracticable using existing

21            structures. To the extent FMI complies with this paragraph by

22            disposing of miscellaneous equipment, obsolete tooling, and/or

23            miscellaneous materials, e.g., scrap metal, currently stored outdoors at

24            the Facility, FMI will comply with all applicable disposal

25            requirements. Any outdoor storage of miscellaneous equipment,

26            obsolete tooling, and/or miscellaneous materials, e.g., scrap metal,

27            remaining following the evaluation required by this paragraph will be

28            subject to review and approval by FMI's EHS Department prior to

storage, and will be in designated outdoor storage areas only.

16.2.   Eliminate outdoor cooling of materials over the ribbon gutter adjacent to the Heat Treat building or isolate that gutter from any potential pollutants from cooling materials.

16.3.   Complete an evaluation of all outdoor storage of tools, and eliminate all outdoor storage of tools unless impracticable using existing structures. Any outdoor storage of tools remaining following the evaluation required by this paragraph will be subject to review and approval by FMI's EHS Department prior to storage, and will be in designated outdoor storage areas only.

16.4.   Install temporary or permanent secondary containment around the mobile compressors and aboveground storage tank adjacent to the forge building. Captured water shall be pumped to a temporary storage container and properly disposed of if contaminated as determined by observance of the occurrence of any leak or spill, the presence of odor, visible contamination, or pH measurement not meeting target values in Table 1. Uncontaminated storm water may be discharged. FMI's visual observations during rain events set out at paragraph twenty-two (22) will include documentation that these procedures are followed. The aboveground storage tank will be refueled indoors unless impracticable. Secondary containment will not be necessary for the aboveground storage tank if the tank is moved indoors or under cover during refueling.

16.5.   Eliminate outdoor vehicle and equipment maintenance unless impracticable. Any outdoor vehicle and equipment maintenance will be done in accordance with written standard operating and incident procedures to be developed consistent with the SWPPP, and will be conducted in a contained area, i.e., an area where a drain cover has

been installed.

16.6.   Close and cover all outdoor containers and/or carts storing metal chips and turnings, unless containers and/or carts are being filled or are in transfer.

16.7.   Close all super sacks and store on pallets or racks.

16.8.   Provide secondary containment for all used oil storage.

17.     Good Housekeeping. Within forty-five (45) days of the Effective Date of the Consent Decree, FMI will, at a minimum, implement the following good housekeeping measures.

16.1.   Institute a daily sweeping program using a PM-10 compliant and/or wet/dry vacuum sweeper and covering all exterior areas of the site exposed to rainfall or runoff and accessible to the sweeper. To document compliance with this paragraph, FMI will record the length of time of sweeper operation, and will provide these records to Waterkeeper within fourteen (14) days of receipt of a written request.

17.2.   Institute a routine trash removal program.

17.3.   Institute a weekly inspection program for inspection of containers and/or carts used to store metal chips, turnings, and/or used oil storage. FMI will take any containers and/or carts identified during inspections conducted pursuant to this paragraph as in need of maintenance out of service for repair. To document compliance with this paragraph, FMI will create container and/or inspection logs to record the storage areas inspected weekly, the inspected container and/or cart contents, and the presence of any spills, leaks or needed repairs and corrective actions taken, and will provide these records to Waterkeeper within fourteen (14) days of receipt of a written request.

17.4.   Place drip mats beneath forklifts and other Facility equipment likely to spill or leak while such equipment is not under cover and is idle for

more than 1 hour. During or immediately before a storm event, drip mats shall be immediately placed beneath forklifts and other Facility equipment likely to spill or leak that are either not under cover or are idle for more than one hour.

    17.5.  Install a trench drain across the driveway at the Facility where Outfall 1 is located.

    17.6.  Install filter media at each storm water drain location, including the trench system, except at Outfall 3.

18.    <u>Run-on to Heat Treat Area</u>. As of the Effective Date, FMI will either sample or eliminate run-on to the Heat Treat area from adjacent facilities.

19.    <u>Non-Storm Water Discharges</u>. Within forty-five (45) days of the Effective Date of the Consent Decree, FMI will eliminate all non-authorized non-storm water discharges from the Facility, and, at a minimum, will implement the following BMPs.

    19.1.  Evaluate containment measures, including but not limited to use of a trench drain, at the Pressure Washing Area and implement selected BMP(s) to prevent non-storm water discharges from leaving the area.

    19.2.  Institute non-storm water cleanup protocols.

**D.    Storm Water Discharge Locations and Storm Water Sampling**

20.    <u>Storm Water Discharge Locations</u>. The current storm water discharge locations at the Premises are:

    20.1.  Outfall 1

    20.2.  Outfall 2

    20.3.  Outfall 3

    20.4.  Outfall 4.

FMI is encouraged to consolidate discharge locations.

21.    <u>Sampling</u>. The following storm water monitoring procedures shall be implemented at the Premises:

    21.1.  <u>Frequency</u>. During the life of this Consent Decree, FMI shall collect

samples of any storm water discharge from the Premises during the scheduled operating hours as defined in the SWPPP as a result of a Qualified Storm Event ("QSE") as defined in the Storm Water Permit.

21.2. <u>Location</u>. During the life of this Consent Decree, FMI shall collect samples from all discharge locations at the Premises including run-on to the Heat Treat Area as described in paragraph eighteen (18) above.

21.3. <u>Parameters</u>. All samples collected pursuant to this section shall be analyzed for the parameters listed in Table 1.

21.4. <u>Lab</u>. A laboratory accredited by the State of California shall analyze all samples collected pursuant to this Consent Decree, excepting pH which will be analyzed onsite using a calibrated portable instrument for pH in accordance with accompanying manufacturer's instructions.

21.5. <u>Detection Limit</u>. The laboratory shall use analytical methods adequate to detect the individual contaminants at or below the values specified in Table 1.

21.6. <u>Holding Time</u>. All samples collected from the Premises shall be delivered to the laboratory and analyzed within the holding times required in 40 CFR Part 136, excepting pH which will be analyzed onsite using a calibrated portable instrument for pH in accordance with accompanying manufacturer's instructions.

21.7. <u>Lab Reports</u>. FMI shall request that sample-analysis results and associated chain of custody forms be reported to them within fourteen (14) days of laboratory receipt of the sample.

21.8. <u>Reports to Waterkeeper</u>. FMI shall provide the complete lab results and pH results of all samples collected at the Premises to Waterkeeper within fourteen (14) days of receiving the lab results.

21.9. <u>Sampling Reduction</u>. FMI may discontinue analyzing storm water

samples collected pursuant to this Consent Decree at any discharge location(s) for a constituent listed in Table 1 that is not otherwise required by Section B.5.c.i. or Table D[2] of the Storm Water Permit, if the sample result for the Table 1 constituent is not detected above the limits stated in Table 1 for five (5) consecutive sample results, and FMI has collected and analyzed the sample pursuant to this Consent Decree.

**E.   Visual Observations**

22.   <u>Storm Water Discharge Observations</u>. During the life of this Consent Decree, FMI shall conduct visual observations at each discharge location during every rain event that produces a discharge.

23.   <u>Non-Storm Water Discharge Observations</u>. During the life of this Consent Decree, FMI shall conduct monthly non-storm water visual observations at each discharge location.

24.   <u>Visual Observations Records</u>. FMI shall maintain observation records to document compliance with this section, and shall provide Waterkeeper with a copy of these records within fourteen (14) days of receipt of a written request from Waterkeeper for the records.

**F.   Employee Training**

25.   <u>Training Program</u>. Within forty-five (45) days of the Effective Date, FMI shall develop and have begun to implement a training program to ensure (1) that there are a sufficient number of employees delegated to achieve compliance with the Storm Water Permit and this Consent Decree at the Premises, and (2) that these employees are properly trained to perform the required activities to achieve compliance with the Storm Water Permit and this Consent Decree ("Training Program"). At a minimum the Training Program shall include:

25.1.   <u>Non-Storm Water Discharges</u>. Employees will be trained on the Storm

---

[2] Or by Section XI.B.6.a.-b. or Table 1 of Order 2014-0057-DWQ.

Water Permit's prohibition of non-storm water discharges, so that employees know what non-storm water discharges are, that non-storm water discharges can result from improper washing or dust control methods, and how to detect and prevent non-storm water discharges. The Training Program will include training on the non-storm water cleanup protocols developed pursuant to paragraph nineteen (19).

25.2. <u>The SWPPP and BMPs</u>. FMI shall train all employees on the SWPPP and specifically BMP implementation and/or maintenance, as applicable, to ensure that BMPs, including the BMPs described in paragraphs sixteen (16), seventeen (17), eighteen (18), and nineteen (19), are implemented effectively to prevent the exposure of pollutants to storm water, to prevent the discharge of contaminated storm water, and to ensure the proper handling of storm water at the Premises.

25.3. <u>Storm Water Sampling</u>. FMI shall designate an adequate number of employees necessary to collect storm water samples from each discharge location at the Premises as required by this Consent Decree. The training for these individuals shall include the proper sampling protocols, including chain of custody requirements, to ensure storm water samples are properly collected, stored, and submitted to a certified laboratory or analyzed onsite, as applicable.

25.4. <u>Training Language</u>. The Training Program shall be conducted in the language of the employee(s) participating in the Training Program.

25.5. <u>Frequency</u>. The Training Program shall be repeated annually, or as necessary to ensure that all responsible employees are familiar with the requirements of this Consent Decree and the Storm Water Permit.

25.6. <u>New Staff</u>. All new staff will participate in the Training Program before assuming responsibilities for compliance with this Consent Decree or the Storm Water Permit.

26. <u>Training Implementation</u>. A private consultant, or an FMI employee, who is familiar with this Consent Decree will complete a State Water Board sponsored or approved Qualified Industrial Storm Water Practitioner ("QISP") training course ninety (90) days after that training becomes available, or a person with the equivalent credentials, as specified at paragraph IX.A.1. of Order No. 2014-0057-DWQ shall implement the Training Program at the Premises. If this training cannot be completed ninety (90) days after that training becomes available due to training course availability, the Settling Parties agree to meet and confer about FMI's participation in the next available training.

27. <u>Training Records</u>. FMI shall maintain training records to document compliance with this section and shall provide Waterkeeper with a copy of these records on June 1 annually for the life of the Consent Decree.

**G.    Reduction of Pollutants in Discharges**

28. <u>Storm Water Contaminant Reduction</u>. FMI shall implement measures designed to achieve the limits in Table 1 ("Numeric Targets").[3] The presence of any contaminant in storm water discharge from the Premises in excess of, or outside the range of, any five (5) Numeric Targets in Table 1 during a single reporting year shall trigger the action plan requirements of paragraph twenty-nine (29), as applicable.

**Table 1. Numeric Targets for Storm Water Discharges**

| Contaminant | Target | Source of Target |
|---|---|---|
| Total Suspended Solids | 100 mg/L | 2008 EPA Benchmark |
| Dissolved Copper | **0.032 mg/L** | California Toxics Rule |
| Dissolved Lead | **0.170 mg/L** | California Toxics Rule |
| Total Recoverable Zinc | **0.260 mg/L** | 2008 EPA Benchmark |
| Oil and Grease | 15 mg/L | 2008 EPA Benchmark |
| Total Recoverable Aluminum | 0.750 mg/L | 2008 EPA Benchmark |
| Total Recoverable Iron | 1.00 mg/L | 2008 EPA Benchmark |
| Total Recoverable Nickel | **1.02 mg/L** | 2008 EPA Benchmark |

[3] Several of the Numeric Limits are hardness dependent. The hardness dependent limits are in bold, and have been adjusted using the methods provided in Appendix J of the 2008 EPA Multi-Sector General Permit and/or the California Toxics Rule as applicable based on hardness data for the Santa Ana River as prepared by the Santa Ana Watershed Project Authority and reported in the 2011 Annual Report of Santa Ana River Water Quality.

| Contaminant | Target | Source of Target |
|---|---|---|
| Chemical Oxygen Demand | 120 mg/L | 2008 EPA Benchmark |
| pH | 6.5-8.5 units | Basin Plan |
| Nitrate Plus Nitrite Nitrogen | 0.680 mg/L | 2008 EPA Benchmark |

29.     Action Plan for Table 1 Numeric Target Exceedances. If any storm water sample(s) collected at the Premises contains a level of contaminant(s) above any five (5) Table 1 Numeric Targets during a single reporting year, FMI shall submit a plan for reducing and/or eliminating the discharge of pollutants designed to achieve the Table 1 Numeric Targets ("Action Plan"). In any reporting year that an Action Plan is required, it shall be submitted ninety (90) days from FMI's receipt of a storm water sample lab report demonstrating a fifth exceedance of a Table 1 Numeric Target or by June 1 following the Wet Season[4] during which the exceedances occurred, whichever is earlier.

29.1.   Phase I Action Plan Requirements. Any Action Plan submitted based on storm water samples collected during the 2015-2016 reporting year shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the Table 1 Numeric Target(s), (2) an assessment of the source for each contaminant exceedance, including but not limited to any outdoor material storage areas and any outdoor vehicle and equipment maintenance areas, (3) the identification of additional BMPs, including an evaluation of the treating of storm water as required by the Storm Water Permit, that are designed to achieve compliance with the Numeric Target(s), and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all Phase I Action Plan measures are implemented as soon as possible, but in no case later than October 1 (prior to the next Wet Season).

---

[4] Wet Season is defined as October 1-April 30.

29.2. <u>Phase II Action Plan Requirements</u>. Any Action Plan submitted based on storm water samples collected after the 2015-2016 reporting year shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the Table 1 Numeric Target(s), (2) an assessment of the source for each contaminant exceedance, (3) the identification and evaluation of additional and/or improved BMPs including, but not limited to, BMPs to capture, infiltrate, evaporate, harvest, store, and/or treat storm water generated from an 85th percentile 24-hour storm event as determined from the San Bernardino County Yard rain gauge that are designed to achieve compliance with the Numeric Targets unless impracticable, and (4) time schedules for implementation of the proposed measures. The time schedule(s) for implementation shall ensure that all Phase II Action Plan BMPs are implemented as soon as possible, but in no case later than July 1 the following year.

29.3. <u>Review</u>. Waterkeeper shall have thirty (30) days upon receipt of an Action Plan to provide FMI with comments. Within fifteen (15) days of FMI's receipt of Waterkeeper's comments on the Action Plan, FMI shall provide written responses to Waterkeeper's comments of recommended BMPs into the Action Plan that either accept and incorporate Waterkeeper's comments or explain the basis for FMI's rejection of Waterkeeper's comments.

29.4. <u>Disputes</u>. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section III below.

30. <u>Completion of an Action Plan</u>. When an Action Plan is completed, FMI shall

revise its SWPPP and/or M&RP, as applicable, prior to the next Wet Season, or within thirty (30) days of completion, whichever is sooner, to reflect the changes required by the Action Plan. FMI shall notify Waterkeeper when an Action Plan has been completely implemented, and shall submit the revised SWPPP and/or M&RP to Waterkeeper for review and comment as set out in paragraph thirty-three (33) below.

**H.     Storm Water Pollution Prevention Plan and Monitoring and Reporting Program**

31.     <u>Premises SWPPP and M&RP</u>. Within one hundred and twenty (120) days of the Effective Date, FMI shall revise and implement the Storm Water Pollution Prevention Plan ("SWPPP") and Monitoring and Reporting Program ("M&RP") for the Premises. FMI's SWPPP and M&RP for the Premises shall, at a minimum, incorporate the following:

31.1.   <u>Persons Responsible and Qualifications</u>. Identifying the individual(s) responsible for compliance with the Storm Water Permit and this Consent Decree including specifying which individual is responsible for what area of compliance (e.g., John Doe: collecting storm water samples) and providing the responsible individual(s)' compliance with QISP training and/or equivalent credentials.

31.2.   <u>Site Map and Description</u>. Revising the Premises site map and site description to reflect all areas associated with forging activities; forged materials storage; tool storage; vehicle and equipment cleaning operations; vehicle and equipment refueling; vehicle and equipment maintenance; storage of materials associated with equipment and vehicle maintenance; the BMPs described at paragraphs sixteen (16), seventeen (17), eighteen (18), and nineteen (19); BMPs described in the Schlosser Facility BMP Plan; and all the discharge locations at the Premises.

31.3.   <u>Assessment of Potential Pollution Sources</u>. Revising the assessment of

potential pollution sources to include identification of specific pollutants that are associated with specific industrial activities or areas at the Premises (e.g., metal forging: aluminum, copper, lead, iron, and zinc).

31.4. <u>Premises BMPs</u>. Include descriptions of the BMPs listed at paragraphs sixteen (16), seventeen (17), eighteen (18), and nineteen (19), and the Schlosser Facility BMP Plan.

31.5. <u>Monitoring Implementation Plan</u>. Include the monitoring requirements listed at paragraphs twenty (20), twenty-one (21), twenty-two (22), twenty-three (23), and twenty-four (24).

31.6. <u>Training Program</u>. Include the Training Program requirements listed at paragraph twenty-five (25).

31.7. <u>Visual Inspection Checklist</u>. Creation of a visual inspection checklist that must be used by trained facility personnel when conducting the visual observations and monitoring of storm water required under the under this Consent Decree.

32. <u>Revising the SWPPP and/or M&RP</u>. FMI shall revise the Premises SWPPP and/or M&RP if there are any changes in the Premises' operations that will alter storm water management at the Premises such that the SWPPP is no longer accurate, including but not limited to changes to storm water discharge point(s) or changes or additions to the BMPs at the Premises whether made pursuant to an Action Plan or not, within thirty (30) days of the occurrence of any of the above-listed events.

33. <u>Commenting on Revised SWPPP and/or M&RPs</u>. FMI shall submit each revised SWPPP and/or M&RP to Waterkeeper for review and comment within ten (10) days of its completion. Waterkeeper shall provide comments, if any, to the FMI within thirty (30) days of receipt of the SWPPP and/or M&RP. FMI shall provide written responses to Waterkeeper's comments of recommended BMPs into the Action Plan that either accept and incorporate Waterkeeper's comments or explain the basis for FMI's

rejection of Waterkeeper's comments within thirty (30) days of receiving Waterkeeper's comments.

34.     Disputes. Any disputes over the adequacy of a SWPPP and/or M&RP shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section III below.

## I.     Compliance Monitoring and Reporting

35.     Site Inspections. Waterkeeper and its representatives may conduct one  (1) Wet Season site inspection and one (1) dry season site inspection per year at the Premises during the life of this Consent Decree.

35.1.   Notice. The site inspections shall occur during normal business hours. Waterkeeper shall provide FMI with twenty-four (24) hours notice prior to each Wet Season site inspection. During the dry season, Waterkeeper shall notify FMI of its intent to perform an inspection and the parties will determine a mutually-acceptable time for the inspection, taking into account site operations and activities, and normally within forty-eight (48) hours of the notice.

35.2.   Documents. During the site inspections, Waterkeeper and its representatives shall be allowed access to the Premises' SWPPP, M&RP, and other monitoring records, reports, and sampling data for the Premises.

35.3.   Samples. During the site inspections, Waterkeeper and/or its representatives may collect samples of discharges from the Premises. A certified California laboratory shall analyze samples collected by Waterkeeper and copies of the lab reports shall be provided to FMI within five (5) business days of receipt. At the request of FMI, the samples shall be split and one half provided to FMI so as to allow FMI to have its own certified California laboratory analyze the samples, in which case FMI shall provide the laboratory results to

Waterkeeper within five (5) business days of receipt.

35.4.  <u>Scope</u>. During the site inspections, Waterkeeper and/or its representatives will be permitted to take written notes but not photographs or videos to record information, data, or observations of the Facility's restricted areas as defined at paragraphs nine (9) and ten (10) the Settling Parties' February 23, 2015, Confidentiality Agreement. Waterkeeper and/or its representatives will be permitted to photograph and/or take written notes to record their observations of all areas other than the Facility's restricted areas.

35.5.  <u>Confidentiality</u>. Waterkeeper representatives will be subject to the terms of the February 23, 2015, Confidentiality Agreement regarding limitations on use and disclosure of information obtained during the site inspections except as provided in paragraph forty-five (45) below. Furthermore, Waterkeeper representatives will individually be required to sign forms releasing FMI for any liability arising out of their entry onto the Premises, which is an active foundry operation, subject to approval of the specific release language by Waterkeeper, which will not be unreasonably withheld.

36.  <u>Compliance Monitoring and Oversight</u>. FMI agrees to partially defray Waterkeeper's monitoring of FMI's compliance with this Consent Decree in the amount of $55,000.00 (Fifty Five Thousand Dollars). The payment shall be made within ten (10) days of the end of the 45-day Federal Agencies review period described in paragraph 6 above or within ten (10) days of the date the Federal Agencies inform the Court that they have no objections to entry of the Consent Decree, whichever is sooner, made payable to: "Orange County Coastkeeper" and delivered by wire transfer, or certified mail or overnight delivery to: Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626.

37.  <u>Action Plan Payments</u>. If FMI is required to submit an Action Plan to

Waterkeeper pursuant to paragraph twenty-nine (29), FMI shall make payment of $5,000.00 (Five Thousand Dollars) per Action Plan payable to: "Orange County Coastkeeper," and delivered by wire transfer, or certified mail or overnight delivery to: Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626 at the time an Action Plan is submitted to Waterkeeper.

38.     <u>Reporting and Document Provision</u>. During the life of this Consent Decree, FMI shall copy Waterkeeper on all documents related to water quality at the Premises that are submitted to the Regional Board, the State Board, and/or any State or local agency, county, or municipality. Such reports and documents shall be provided to Waterkeeper concurrently as they are sent to the agencies, counties, and/or municipalities. Any correspondence related to FMI's compliance with the Storm Water Permit or water quality received by FMI from any regulatory agency, State or local agency, county, and/or municipality shall be forwarded to Waterkeeper within ten (10) business days of receipt by FMI.

**J.     Environmental Mitigation Project, Litigation Fees and Costs, Stipulated Penalties and Interest**

39.     <u>Environmental Mitigation Project</u>. To remediate environmental harms resulting from allegations in the Complaint, FMI agrees make a payment of $50,000.00 (Fifty Thousand Dollars) to the Rose Foundation for Communities and the Environment to fund environmental project activities that will benefit the Southern California Bight and its watershed. The payment shall be made within ten (10) days of the entry of this Consent Decree by the Court payable to the "Rose Foundation for Communities and the Environment," and delivered via certified mail, overnight delivery, or wire transfer to: 1970 Broadway, Suite 600, Oakland, California 94612-2218. FMI shall provide Waterkeeper with a copy of such payment.

40.     <u>Waterkeeper's Litigation Costs</u>. To partially reimburse Waterkeeper for its investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating

this Consent Decree, FMI shall pay a total of $160,000.00 (One Hundred and Sixty Thousand Dollars). The payment shall be made within ten (10) days of the end of the 45-day Federal Agencies review period described in paragraph 6 above or within ten (10) days of the date the Federal Agencies inform the Court that they have no objections to entry of the Consent Decree, whichever is sooner payable to: "Orange County Coastkeeper" and delivered by wire transfer to: Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626.

41.   <u>Stipulated Payment</u>. FMI shall make a stipulated payment of $1,000.00 (One Thousand Dollars) for each missed deadline included in this Consent Decree. Payments for a missed deadline shall be made for the restoration and/or improvement of the watershed in the area affected by FMI's discharges and shall be made to "Rose Foundation for Communities and the Environment" and delivered via certified mail, overnight delivery, or wire transfer to: 1970 Broadway, Suite 600, Oakland, California 94612-2218. FMI agrees to make the stipulated payment within thirty (30) days of a missed deadline. FMI shall provide Waterkeeper with a copy of each such payment at the time it is made.

## III.   DISPUTE RESOLUTION

42.   This Court shall retain jurisdiction over this matter for the life of this Consent Decree for the purposes of enforcing the terms and conditions of this Consent Decree, and adjudicating all disputes among the Settling Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

43.   <u>Meet and Confer</u>. A party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying all other Settling Parties in writing of the matter(s) in dispute. The Settling Parties shall then meet and confer in good faith (either telephonically or in person) in an attempt to resolve the dispute over a period of ten (10) days from the date of the notice. The Settling Parties may elect to extend this time in an effort to resolve the dispute without court intervention.

44.     If the Settling Parties cannot resolve a dispute through the informal meet and confer process, the Settling Parties agree to request a settlement meeting or conference before the Magistrate Judge assigned to this action. The Settling Parties agree to file any waivers necessary for the Magistrate Judge to preside over any settlement meeting or conference. In the event that the Settling Parties cannot resolve the dispute within sixty (60) days of the initial settlement meeting or conference with the Magistrate Judge, the Settling Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Settling Parties agree to request an expedited hearing schedule on the motion.

45.     In the event a dispute is submitted for formal resolution by filing a motion pursuant to paragraph forty-four (44) above, the Settling Parties agree to execute a Stipulated Protective Order allowing the use of information gathered during site inspections conducted pursuant to paragraphs twelve (12) and thirty-five (35) above in support of such motion upon the stipulated conditions articulated in the Stipulated Protective Order. The stipulated conditions of the Stipulated Protective Order shall be consistent with the requirements of Federal Rule of Civil Procedure 26(c) and Civil Local Rule 79-5.

46.     Litigation costs and fees incurred in conducting meet and confer or otherwise addressing and/or resolving any dispute, including an alleged breach of this Consent Decree, shall be awarded in accord with the standard established by Section 505 of the Clean Water Act, 33 U.S.C. §§ 1365 and 1319, and case law interpreting that standard.

## IV.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

47.     Waterkeeper's Release. Upon the Effective Date of this Consent Decree, Waterkeeper, on its own behalf and on behalf of its current and former officers, directors, employees, and each of their successors and assigns, and its agents, attorneys, and other representatives releases all persons including, without limitation, FMI (and each of its current and former officers, directors, members, employees, shareholders and each of

1   their predecessors, successors and assigns, and each of their agents, attorneys,

2   consultants, and other representatives) from, and waives all claims which arise from or

3   pertain to this action, including all claims for injunctive relief, penalties, fees (including

4   fees of attorneys, experts, and others), costs, expenses or any other sum incurred or

5   claimed, and/or claims related to the Premises up to the Effective Date.

6        48.   <u>FMI's Release</u>. Upon the Effective Date of this Consent Decree, FMI, on its

7   own behalf and on behalf of its current and former officers, directors, employees,

8   members, and each of their successors and assigns, and their agents, attorneys, and other

9   representatives releases Waterkeeper (and its current and former officers, directors,

10  employees, members, parents, subsidiaries, and affiliates, and each of their successors

11  and assigns, and its agents, attorneys, and other representatives) from, and waives all

12  claims which arise from or pertain to this action, including all claims for fees (including

13  fees of attorneys, experts, and others), costs, expenses or any other sum incurred or

14  claimed for matters related to the Premises up to the Effective Date.

15       49.   Nothing in this Consent Decree limits or otherwise affects Waterkeeper's

16  right to address or take any position that it deems necessary or appropriate in any formal

17  or informal proceeding before a regulatory agency, or any other judicial or administrative

18  body on any other matter relating to FMI's compliance with the Storm Water Permit or

19  the Clean Water Act occurring or arising after the Effective Date of the Consent Decree.

20  **V.**    <u>**MISCELLANEOUS PROVISIONS**</u>

21       50.   <u>No Admission of Liability</u>. Neither this Consent Decree, the implementation

22  of additional BMPs nor any payment pursuant to the Consent Decree shall constitute or

23  be construed as a finding, adjudication, admission or acknowledgment of any fact, law, or

24  liability, nor shall it be construed as an admission of violation of any law, rule, or

25  regulation. FMI maintains and reserves all defenses it may have to any alleged violations

26  that may be raised in the future.

27       51.   <u>Force Majeure</u>. Force Majeure includes any act of God, war, fire,

28  earthquake, windstorm, flood or natural catastrophe; civil disturbance, vandalism,

sabotage or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. Force Majeure shall not include normal inclement weather, economic hardship, or inability to pay. Any party seeking to rely upon this paragraph to excuse or postpone performance, shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Settling Parties shall exercise due diligence to resolve and remove any Force Majeure event. Delay in compliance with a specific obligation under this Consent Decree due to Force Majeure as defined in this paragraph shall not excuse or delay compliance with any or all other obligations required under this Consent Decree.

52.     Construction. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit, the Clean Water Act, or specifically herein.

53.     Choice of Law. The laws of the United States shall govern this Consent Decree.

54.     Severability. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

55.     Correspondence. All notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by overnight mail or courier as follows:

If to Plaintiffs:
Garry Brown, Executive Director
    garry@coastkeeper.org
Colin Kelly, Staff Attorney
    colin@coastkeeper.org
3151 Airway Avenue, Suite F-110
Costa Mesa, California 92626

Caroline Koch
    caroline@lawyersforcleanwater.com

Lawyers for Clean Water, Inc.
1004A O'Reilly Avenue
San Francisco, California 94129

If to Defendant:

Karen Ruhl
Forged Metals, Inc.
10685 Beech Avenue
Fontana, CA 92337

Jennifer Fary Smith
Alcoa Inc.
201 Isabella Street
Pittsburgh, PA  15212

The Settling Parties agree to transmit documents electronically. Electronically transmitted documents shall be deemed submitted on the date of the electronic transmission. Any change of address or addresses shall be communicated in the manner described above for giving notices.

56.   Effect of Consent Decree. Except as provided herein, Waterkeeper does not, by its consent to this Consent Decree, warrant or aver in any manner that FMI's compliance with this Consent Decree will constitute or result in compliance with any Federal or State law or regulation. Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of FMI to comply with all Federal, State, and local laws and regulations governing any activity required by this Consent Decree.

57.   Counterparts. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, email of a .pdf signature, and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

58.   Modification of the Consent Decree. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated other than by the automatic operation of paragraphs eight (8) and nine (9) unless by a written instrument, signed by the Settling Parties and approved by the Court.

59.   Full Settlement. This Consent Decree constitutes a full and final settlement of this matter.

60. <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Settling Parties and expressly supersedes any and all prior oral or written agreements covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

61. <u>Authority</u>. The undersigned representatives for Waterkeeper and FMI each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree.

62. The provisions of this Consent Decree apply to and bind the Settling Parties, including any successors or assigns. The Settling Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Settling Parties, and to legally bind the Settling Parties to its terms.

63. The Settling Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms. By entering into this Consent Decree, FMI does not admit liability for any purpose as to any allegation or matter arising out of the Notice Letter and Complaint.

**IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree as of the date first set forth below.


APPROVED AS TO CONTENT


Dated: _____, 2015          By: _____
                                     Garry Brown
                                     Inland Empire Waterkeeper


Dated: _____, 2015          By: _____
                                     Garry Brown
                                     Orange County Coastkeeper

1  Dated: _____, 2015          By: _____

2                                            Shawn Gould, General Manager
                                             Forged Metals, Inc.
3

4

5  APPROVED AS TO FORM

6                                            LAWYERS FOR CLEAN WATER, INC.

7

8

9  Dated: August 28, 2015                 By: _____

10                                           Daniel Cooper
                                             Caroline Koch
11                                           Attorney for Plaintiff

12

13                                          COOPER, WHITE & COOPER

14

15  Dated: _____, 2015          By: _____

16                                           John Epperson
                                             Attorney for Defendant
17

18  **IT IS SO ORDERED.**                  UNITED STATES DISTRICT COURT
                                            CENTRAL DISTRICT OF CALIFORNIA
19

20

21  Date:  October 26, 2015
                                            .
22                                          Michael W. Fitzgerald

23

24

25

26

27

28